RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP
500 Fifth Avenue, 49th Floor
New York, New York 10110
(212) 302-6574
Attorneys for Plaintiff Commercial Lubricants, LLC

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMMERCIAL LUBRICANTS, LLC, | Case No. 14-cv-07483 |
| Plaintiff, | ECF CASE |
| v. | |
| SAFETY-KLEEN SYSTEMS, INC., | |
| Defendant. | **AMENDED COMPLAINT AND JURY DEMAND** |

Plaintiff Commercial Lubricants, LLC. ("Plaintiff"), through its attorneys, Riker, Danzig, Scherer, Hyland & Perretti, LLP, alleges:

### PARTIES

1.      Plaintiff is a New York Limited Liability Company with its principal place of business located at 229 Arlington Avenue, Staten Island, New York 10303.

2.      Defendant Safety-Kleen Systems, Inc. ("Defendant") is a Wisconsin corporation whose principal place of business is located at 2600 North Central Expressway, Suite 400, Richardson, Texas 75080.

### JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.  The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between Plaintiff and Defendants.

4.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2).

## FACTS

**A.      The Historical Relationship between NYCL and Defendant**

5.      In July 2013, Plaintiff purchased the operating assets of New York Commercial Lubricants, Inc. ("NYCL").  Plaintiff purchased certain of NYCL's contractual rights and assumed certain of NYCL's liabilities for debts in existence prior to the closing of Plaintiff's purchase of NYCL's assets.

6.      NYCL purchased and distributed re-refined oil from Defendant.

7.      Approximately twenty years ago, NYCL entered into an agreement with Defendant under which NYCL spear-headed costly and arduous efforts to obtain approval of EcoPower CJ-4+Lubrizol Heavy Duty Motor Oil 15W40 ("CJ-4+Lubrizol") for the MTA-New York City Qualified Products List, which sets forth products approved for purchase by the New York City Mass Transit Authority ("NYCMTA").

8.      For approximately the past twenty years, NYCL, and, thereafter, Plaintiff, have invested time, money and resources in cultivating and expanding NYCMTA's usage of CJ-4+Lubrizol.

9.      NYCL purchased approximately ten million gallons of CJ-4+Lubrizol from Defendant for re-sale to the NYCMTA under public bids over a twenty year period.

10.      As a result of NYCMTA's purchase/approval of CJ-4+Lubrizol, other municipalities and government agencies across the United States also purchased re-refined CJ-4, as well as other re-refined oil produced by Defendant.  Defendant has reaped substantial profits

as a result of the joint effort by NYCL and Defendant to obtain NYCMTA's approval of EcoPower product and NYCMTA's continued use of Defendant's product.

11.     NYCL and Plaintiff also provided Defendant with approximately 700,000 gallons of waste oil per year during the past ten years, receiving a commission on a per gallon basis.

12.     NYCL and Plaintiff were among the top three distributors in the United States of Defendant's re-refined oil and one of the top two providers to Defendant of waste oil.

**B.     Plaintiff's Continuation of NYCL's Relationship with Defendant**

13.     In July 2013, after Plaintiff's acquisition of NYCL's assets, Plaintiff and Defendant entered into an agreement under which Plaintiff would endeavor to obtain consideration of CJ-4 with Infineum ("CJ-4+Infineum") for the NYCMTA Qualified Products List.  In exchange, Defendant agreed that it would provide to Plaintiff a $.15 per gallon discount on CJ-4+Lubrizol that Defendant had contracted to sell to Plaintiff at the price of $5.65/gallon for sale to NYCMTA for the duration of Plaintiff's winning bid # 000005598.  Thus, after the application of the $.15 per gallon discount, the sales price to Plaintiff would be $5.50 per gallon.

14.     In addition, Defendant agreed that it would provide to Plaintiff exclusive pricing support for sales of Defendant's re-refined oil to the New York City Department of General Services and its agencies, including NYCMTA.  That is, Defendant agreed that it would provide preferred pricing – lower than that provided to other distributors – for the sale of re-refined oil to Plaintiff for submission of bids to New York City and its agencies, including NYCMTA.

15.     Further, with Defendant's active promotion and encouragement, Plaintiff invested significant amounts in marketing and licensing to sell Defendant's America's Choice synthetic motor oils as "Super Clean," under an agreement with Defendant.  As of the first quarter of 2014, Plaintiff was selling 20,000 gallons per month of Super Clean motor oil.  Based on said

sales and customer interest, Plaintiff projected increasing its sales to approximately 400,000 gallons per year within the near future.

### C. Defendant's Improper Efforts to Put Plaintiff Out of Business in Order to Stifle Competition and Increase Defendant's Profits

16.    Over the past year, Defendant has engaged in various actions designed and intended to deprive Plaintiff of sales, to damage its credit, undermine its business and prevent it from acting as a distributor of Plaintiff's products.

17.    In so doing, Defendant has engaged in deceptive practices, committed misrepresentations, intentionally overcharged Plaintiff and made knowingly false representations to credit agencies.

18.    In 2013-14, Plaintiff had a $750,000 credit line for the purchase of products from Defendant.  However, as is set forth below, beginning in late 2013, Defendant repeatedly over-charged Plaintiff for product, failed to provide Plaintiff credits to which it was entitled and submitted erroneous charges, including charges for alleged transactions with NYCL, a distinct entity, to Plaintiff in order to artificially inflate Plaintiff's supposed accounts payable to Defendant and thereby fictitiously decrease the amount of credit available to Plaintiff.  In the spring of 2014, Defendant used the supposed over-drafts on Plaintiff's credit line as a pretext to withhold credit for further purchase of product by Plaintiff from Defendant.

19.    In so doing, Defendant acted in bad faith and with the intent to damage Plaintiff's business.

### 1. Defendant's Overcharges for Sales of CJ-4+Lubrizol

20.    First, notwithstanding Defendant's agreement to charge $5.50 per gallon for CJ-4+Lubrizol purchased for sale to NYCMTA for the duration of Plaintiff's winning bid # 000005598, among other things, in exchange for Plaintiff's obtaining consideration of CJ-

4+Infineum for the NYCMTA Qualified Product List, and Plaintiff's obtaining said consideration, Defendant invoiced Plaintiff for the purchase of 126,503 gallons of oil purchased for sale under said contract at the rate of $5.65 per gallon. Defendant has failed and refused to give the $.15 per gallon credit that was agreed upon. As a result, Defendant overcharged Plaintiff by $18,975.45.

**2.      Defendant's Improper Charges for Storage of Defendant's Oil and Failure to Timely Pay Commissions Owing to Plaintiff**

21.      Under an agreement entered into in February 2014, Plaintiff agreed to permit Defendant to store 50,000 gallons of Defendant's oil in Plaintiff's storage tanks. Said oil was not sold to Plaintiff, and it was agreed that there would be no charge for its delivery to Plaintiff.

22.      However, in contravention of that agreement, Defendant billed Plaintiff as if the oil was purchased by Plaintiff.

23.      For an extended period, during the spring of 2014, Defendant wrongfully counted these charges against Plaintiff's credit line, and ultimately put a credit hold in place based, in part, on these erroneous charges.

24.      Upon information and belief, by so doing, Defendant was able thereby to improperly book inventory transfers as sales.

25.      Defendant has also failed to timely pay to Plaintiff commissions on waste oil provided by Plaintiff to Defendant.

**3.      Defendant's Improper Charges for Sales to Full Circle Manufacturing, Inc. a Different Entity**

26.      Full Circle Manufacturing, Inc. ("Full Circle") is a global recycling company that was owned by the same owner as NYCL.

27.	However, Defendant billed Plaintiff for sales of product to Full Circle.  Despite the fact that Plaintiff repeatedly brought to Defendant's attention the fact that these charges were erroneous and should not be directed to Plaintiff, Defendant failed and refused to reverse the charges.

28.	Again, for an extended period in 2013 and into 2014, Defendant wrongfully counted these charges against Plaintiff's credit line, and ultimately put a credit hold in place based, in part, on these erroneous charges.

29.	The total amount of said charges ranged between approximately $100,000 to $400,000.

### 4.	Defendant's Improper Attempt to Charge Plaintiff for a Disputed Invoice to Plaintiff's Predecessor

30.	Defendant incorrectly contends that Plaintiff owes it $429,300.74 based on disputed outstanding invoices sent to NYCL before Plaintiff purchased NYCL's assets.

31.	Not only is Plaintiff not responsible for debts incurred by NYCL prior to Plaintiff's purchase of its assets, but, in addition, the $429,300.74 charge is erroneous, and said amount was not owed by NYCL to Defendant in any event.

32.	In 2012, Defendant agreed to sell NYCL CJ-4+Lubrizol for $5.28 per gallon for distribution to NYCMTA under an extension of a pre-existing sale contract under which NYCL sold CJ-4+Lubrizol to NYCMTA for $6.87 per gallon.  Defendant agreed to this arrangement so that NYCL could extend said sale contract with the NYCMTA.  As was discussed with Defendant, the agreed-upon price would permit NYCL to cover its overhead and make a reasonable profit on its sales of the CJ-4+Lubrizol to NYCMTA.

33.	In reliance on Defendant's agreement, NYCL extended the NYCMTA contract at $6.87/gallon and purchased re-refined oil from Defendant for re-sale to NYCMTA.

34.     Despite the agreement, Defendant billed NYCL for the CJ-4+Lubrizol at $6.68 per gallon.  Despite repeated requests, Defendant failed and refused to provide a credit to correct the overcharge.

35.     Although Plaintiff has repeatedly advised Defendant that Plaintiff is not liable for the debt alleged under said invoice, both because the invoice was erroneous and because Plaintiff is not liable for the pre-asset purchase debts of NYCL, Defendant has continued to maintain that Plaintiff owes said amount and has counted it against Plaintiff's credit limit.

### 5.     Improper Credit Hold

36.     As a result of these improper charges and failures to provide credits to which Plaintiff is entitled, in the spring of 2014, Defendant placed Plaintiff on credit hold, preventing Plaintiff from purchasing Defendant's product.

37.     As a result of the credit hold, Plaintiff could no longer purchase America's Choice motor oil and has lost its Super Clean business, which constituted 20,000 gallons per month as of the first quarter of 2014, and which Plaintiff conservatively projected would increase to approximately 400,000 gallons per year in the near future.

38.     Currently, Defendant has demanded payment of Plaintiff's alleged, falsely inflated arrearage and refused to reinstate Plaintiff's credit.  Defendant improperly contends that Plaintiff owes it $1,056,383.97.  Defendant has refused to provide credits for the CJ-4+Lubrizol overcharges, the erroneous NYCL debt, improper billings for NGEO or improper billings for America's Choice CJ-4, or to timely pay commissions due and owing to Plaintiff for waste oil.

### D.     Plaintiff's Breaches of its Exclusivity Agreement with Defendant

39.     As noted, in the fall of 2013, Plaintiff and Defendant entered into an agreement under which Plaintiff would endeavor to obtain consideration of CJ-4+Infineum for the MTA-

New York City Qualified Products List. In exchange, Defendant agreed that it would sell CJ-4+Lubrizol to Plaintiff for $5.50 per gallon, for the duration of Plaintiff's winning bid # 000005598, and that Defendant would provide to Plaintiff exclusive pricing support for sales of Plaintiff's re-refined oil to New York City and its agencies, including NYCMTA – *i.e,* Defendant would not sell re-refined oil to other distributors for submission of bids to New York City and its agencies, including NYCMTA, at prices lower than those provided to Plaintiff.

40. The $5.50 per gallon price represented a $.15 per gallon discount off of the price at which Defendant otherwise would have sold CJ-4+Lubrizol to Plaintiff.

41. In September 2013, and thereafter, Plaintiff advised Defendant that Plaintiff had made significant progress in discussions with New York City officials to educate them with respect to Defendant's new product, CJ-4+Infineum, and obtain consideration of CJ-4+Infineum for the NYCMTA Qualified Product List. Moreover, in January 2014, NYCMTA indicated that and took action based on which it would consider CJ-4+Infineum for the NYCMTA Qualified Product List.

42. In furtherance of Plaintiff's efforts to obtain such consideration of CJ-4+Infineum for the NYCMTA Qualified Product List, and ultimate approval of CJ-4+Infineum for said list, between September 2013 and February 2014, Plaintiff repeatedly asked Defendant to provide data and information that NYCMTA required to approve CJ-4+Infineum and place that product on its Qualified Products List.

43. Despite these repeated requests, and although it contradicted the parties' agreement and Defendant's own expressed desire to get CJ-4+Infineum approved, Defendant failed to provide the requested data and information over that five-month period.

44.     Defendant intentionally failed to provide said data and information, but continued to mislead Plaintiff by promising to provide it and reiterating its commitment to the parties' agreement.

45.     As a result of Plaintiff's efforts to persuade NYCMTA to consider CJ-4+Infineum for its Qualified Products List, in January 2014, NYCMTA put out a bid for natural gas engine oil ("NGEO") without specifying what additive was required.   This provided Plaintiff an opportunity to submit a bid for oil with Infineum.

46.     However, as Plaintiff advised Defendant, submission of the bid without the technical data and other information that the NYCMTA required would have been futile. Plaintiff specifically advised Defendant, and Defendant was well aware, that without said technical information, any bid could not succeed and, therefore, Plaintiff would not submit a bid.

47.     Had Plaintiff received the technical data and other information that Defendant promised to provide, Plaintiff would have submitted a bid and obtained the contract.   In addition, NYCMTA would have approved CJ-4+Infineum for its Qualified Products List. Further, based on such approval, Plaintiff would have been able to make additional future sales of CJ-4+Infineum to NYCMTA.

48.     The bidding period closed on February 26, 2014.  Plaintiff did not submit a bid because Plaintiff lacked the necessary technical data and related information.

49.     Plaintiff subsequently learned that, in addition to withholding the required technical data and other information from Plaintiff, Defendant, in breach of the parties' exclusivity agreement, provided price support to GH Berlin, a rival distributor, which allowed GH Berlin to submit a bid and receive the contract.

50.     Thereafter, in July 2014, the NYCMTA put out a bid for CJ-4+Lubrizol.  As with the February 2014 bid, another distributor, Circle Lubricants, Inc., submitted a bid, which was based on technical support provided to Plaintiff by Defendant in breach of Defendant's exclusivity agreement with Plaintiff.

### E.     Defendant's Anti-Competitive Scheme

51.     By the conduct set forth above, Defendant has attempted to eliminate Plaintiff as a distributor of Defendant's products to New York City and its agencies and subdivisions (collectively, "New York City").

52.     Upon information and belief, Defendant has admitted and affirmed that its actions have been taken with the intent and purpose of destroying Plaintiff as a viable business.

53.     Upon information and belief, including Defendant's own statements, Defendant has taken this action in order to avoid supplying its product to New York City at the rate it agreed to with Defendant.  As a result, both Plaintiff and New York City have been damaged.

54.     Furthermore, by attempting to destroy Plaintiff, Defendant has attempted to limit competition and to undermine the competitive bidding system utilized by New York City, by limiting the number of bidders that would provide Defendant's product.  By so doing, Defendant's intent and plan is to increase the price that the remaining distributors can charge for Defendant's products, including in sales to New York City, and thereby to increase the price that Defendant can charge its distributors.  As a result of Defendant's wrongful actions, both Plaintiff and New York City have been damaged.

### F.     Defendant's Continuing Interference With Plaintiff's Commercial Endeavors

55.     Defendant, directly or indirectly, has communicated with one or more agencies or departments of the City of New York in an effort to induce them not to purchase products from

Plaintiff. Defendant's conduct has been in furtherance of its scheme to damage Plaintiff and Plaintiff's ability to act as a distributor of oil to New York City and its agencies.

## FIRST CAUSE OF ACTION
### (Breach of Exclusivity Agreement)

56.     Plaintiff repeats the allegations of the foregoing paragraphs of this Complaint as if set forth at length herein.

57.     As is set forth above, Defendant has breached its obligations under its agreement with Plaintiff to provide exclusive price support for sales of Defendant's product  to New York City and to sell CJ-4+Lubrizol to Plaintiff for $5.50 per gallon, for the duration of Plaintiff's winning bid # 000005598, in exchange for Plaintiff's obtaining consideration of CJ-4+Infineum for the NYCMTA Qualified Product List.

58.     As a direct and proximate result of said breaches, Plaintiff has been and continues to be damaged.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

(a)     compensatory and consequential damages, plus interest;

(b)     a declaratory judgment that the price of Defendant's sales of CJ-4+Lubrizol to Plaintiff for the duration of Plaintiff's winning bid # 000005598 is $5.50/gallon;

(b)     for costs of suit, including attorney's fees; and

(c)     for such further relief as the Court deems just and equitable.

## SECOND CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

59.     Plaintiff repeats the allegations of the foregoing paragraphs of this Complaint as if set forth at length herein.

60. In Plaintiff's agreement with Defendant as stated above, there is an implied covenant of good faith and fair dealing.

61. As is set forth above, Defendant has breached its obligation of good faith and fair dealing under its agreement with Plaintiff to provide exclusive price support for sales of Defendant's product to New York City, and to sell CJ-4+Lubrizol to Plaintiff for $5.50 per gallon, for the duration of Plaintiff's winning bid # 000005598, in exchange for Plaintiff's obtaining consideration of CJ-4+Infineum for the NYCMTA Qualified Product List.

62. Among other things, Defendant withheld technical data and other information from Plaintiff in order to undermine Plaintiff's effort to obtain NYCMTA consideration and/or ultimate approval of CJ-4+Infineum for its Qualified Products List.

63. In addition, Defendant failed to perform its obligations under said agreement.

64. Defendant has acted in bad faith and deprived Plaintiff of the benefit of the parties' agreement.

65. As a direct and proximate result of said breaches, Plaintiff has been and continues to be damaged.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

(a)     compensatory and consequential damages, plus interest;

(b)     for costs of suit, including attorney's fees; and

(c)     for such further relief as the Court deems just and equitable.

### THIRD CAUSE OF ACTION
### (Breach of Credit Agreement)

66. Plaintiff repeats the allegations of the foregoing paragraphs of this Complaint as if set forth at length herein.

67.     As is set forth above, Plaintiff and Defendant entered into a credit line agreement under which Defendant agreed to make available to Defendant $750,000 in credit for the purchase of products from Plaintiff.

68.     Defendant has breached its obligations under said agreement by withholding credit based on false and fictitious balances that include overcharges and erroneous charges and that fail to include credits to which Plaintiff is entitled.

69.     As a direct and proximate result of said breaches, Plaintiff has been and continues to be damaged.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

       (a)     compensatory and consequential damages, plus interest;

       (b)     a declaratory judgment as to the correct amount, if anything, owed by Plaintiff to Defendant;

       (c)     for costs of suit, including attorney's fees; and

       (d)     for such further relief as the Court deems just and equitable.

### FOURTH CAUSE OF ACTION
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

70.     Plaintiff repeats the allegations of the foregoing paragraphs of this Complaint as if set forth at length herein.

71.     In Plaintiff's credit agreement with Defendant, there is an implied covenant of good faith and fair dealing.

72.     As is set forth above, Defendant has breached its obligation of good faith and fair dealing under its credit line agreement with Plaintiff.

73.     By its actions, Defendant has deprived Plaintiff of the benefits of its credit agreement with Plaintiff.

74. As a direct and proximate result of said breaches, Plaintiff has been and continues to be damaged.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

(a) compensatory and consequential damages, plus interest;

(b) for costs of suit, including attorney's fees; and

(c) for such further relief as the Court deems just and equitable.

## FIFTH CAUSE OF ACTION
### (Breach of Implied Contract)

75. Plaintiff repeats the allegations of the foregoing paragraphs of this Complaint as if set forth at length herein.

76. There was a meeting of the minds between Plaintiff and Defendant pursuant to which Defendant would provide exclusive price support for sales of Defendant's product to New York City as well as a price discount on product purchased by Plaintiff from Defendant, in exchange for Plaintiff's obtaining consideration of CJ-4+Infineum for the NYCMTA Qualified Product List.

77. Plaintiff performed its aspect of this agreement.

78. As is stated more fully above, Defendant breached its obligations under the agreement.

79. As a direct and proximate result of said breaches, Plaintiff has been and continues to be damaged.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

(a) compensatory and consequential damages, plus interest;

(b) for costs of suit, including attorney's fees; and

(c) for such further relief as the Court deems just and equitable.

## SIXTH CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

80. Plaintiff repeats the allegations of the foregoing paragraphs of this Complaint as if set forth at length herein.

81. In Plaintiff's implied agreement with Defendant, as set forth in the preceding cause of action, there was an implied covenant of good faith and fair dealing.

82. As is set forth above, Defendant has breached its obligation of good faith and fair dealing under its implied contract with Plaintiff.

83. Among other things, Defendant withheld technical data and other information from Plaintiff in order to undermine Plaintiff's effort to obtain NYCMTA acceptance of a bid for CJ-4+Infineum for its Qualified Products List.

84. As is stated more fully above, Defendant breached its obligations under the parties' agreement.

85. Defendant acted in bad faith and deprived Plaintiff of the benefit of the parties' agreement.

86. As a direct and proximate result of said breaches, Plaintiff has been and continues to be damaged.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

(a) compensatory and consequential damages, plus interest;

(b) for costs of suit, including attorney's fees; and

(c) for such further relief as the Court deems just and equitable.

## SEVENTH CAUSE OF ACTION
### (Promissory Estoppel)

87.  Plaintiff repeats the allegations of the foregoing paragraphs of this Complaint as if set forth at length herein.

88.  Defendant made a clear and unambiguous promise to Plaintiff that Defendant would provide exclusive price support for sales of Defendant's product to New York City as well as a price discount on product purchased by Plaintiff from Defendant, in exchange for Plaintiff's obtaining consideration of CJ-4+Infineum for the NYCMTA Qualified Product List.

89.  In reliance on that promise, Plaintiff persuaded NYCMTA to entertain CJ-4+Infinium as a viable product for purchase.

90.  However, Defendant failed and refused to keep its promise.

91.  As a direct and proximate result of Plaintiff's reliance and Defendant's failure to perform its promise, Plaintiff has been and continues to be damaged.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

    (a)    compensatory and consequential damages, plus interest;

    (b)    a declaratory judgment as to the price of the product purchased by Plaintiff from Defendant for sale under Plaintiff's winning bid # 000005598;

    (c)    for costs of suit, including attorney's fees; and

    (d)    for such further relief as the Court deems just and equitable.

## EIGHTH CAUSE OF ACTION
### (Equitable Estoppel)

92.  Plaintiff repeats the allegations of the foregoing paragraphs of this Complaint as if set forth at length herein.

93.  By its words and/or conduct, Defendant misrepresented to Plaintiff that Defendant would provide exclusive price support for sales of Defendant's product to New York City as

well as a price discount on product purchased by Plaintiff from Defendant, in exchange for Plaintiff's obtaining consideration of CJ-4+Infineum for the NYCMTA Qualified Product List.

94.     By its words and/or conduct, Defendant misrepresented to Plaintiff that, based on Plaintiff's persuading NYCMTA to entertain CJ-4+Infinium as a viable product for purchase, Plaintiff would be the exclusive distributor to New York City of Plaintiff's products.

95.     Defendant intended that Plaintiff act in reliance on the above-stated words and conduct.

96.     Defendant did not, in fact, intend to provide exclusive price support for sales of Defendant's product to New York City or a price discount on product purchased by Plaintiff from Defendant, in exchange for Plaintiff's obtaining consideration of CJ-4+Infineum for the NYCMTA Qualified Product List.

97.     Defendant did not, in fact, intend to supply product to Plaintiff as the exclusive distributor of Defendant's products to New York City in exchange for Plaintiff's obtaining consideration of CJ-4+Infineum for the NYCMTA Qualified Product List.

98.     In reliance on Defendant's promise, Plaintiff acted to its detriment, including by investing time, money and resources in persuading NYCMTA to entertain CJ-4+Infinium as a viable product for purchase.

99.     However, Defendant failed and refused to keep its promise.

100.    In reliance on Defendant's words and conduct, Plaintiff has changed its position to its detriment.

101.    As a direct and proximate result of Plaintiff's reliance and Defendant's failure to perform its promise, Plaintiff has been and continues to be damaged.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

(a)  compensatory and consequential damages, plus interest;

(b)  for costs of suit, including attorney's fees; and

(c)  for such further relief as the Court deems just and equitable.

## NINTH CAUSE OF ACTION
### (Fraud)

102.  Plaintiff repeats the allegations of the foregoing paragraphs of this Complaint as if set forth at length herein.

103.  In numerous telephone conversations and in e-mail correspondence between September 2013 and January 2014, Defendant misrepresented to Plaintiff that Defendant would provide exclusive price support for sales of Defendant's product to New York City as well as a price discount on product purchased by Plaintiff from Defendant, in exchange for Plaintiff's obtaining consideration of CJ-4+Infineum for the NYCMTA Qualified Product List.

104.  In numerous telephone conversations and in e-mail correspondence between September 2013 and January 2014, Defendant misrepresented to Plaintiff that, based on Plaintiff's persuading NYCMTA to entertain CJ-4+Infinium as a viable product for purchase, Plaintiff would be the exclusive distributor to New York City of Plaintiff's products.

105.  Said communications were between Gary Stetz, Plaintiff's Managing Member, as well as other officers, employees, officers and agents of Plaintiff, and Curt Knapp, Steve Lewis, Mike Smith, George Kaiser, Sharon Furtado, Stefan Von Lukawiecki, Jason Sperry and other employees, officers and agents of Defendant.

106.  Defendant intended that Plaintiff rely on these misrepresentations.

107.  Defendant did not, in fact, intend to provide exclusive price support for sales of Defendant's product to New York City or a price discount on product purchased by Plaintiff

from Defendant, in exchange for Plaintiff's obtaining consideration of CJ-4+Infineum for the NYCMTA Qualified Product List.

108. Defendant did not, in fact, intend to supply product to Plaintiff as the exclusive distributor of Defendant's products to New York City in exchange for Plaintiff's obtaining consideration of CJ-4+Infineum for the NYCMTA Qualified Product List.

109. In reliance on Defendant's misrepresentations, Plaintiff persuaded NYCMTA to entertain CJ-4+Infinium as a viable product for purchase.

110. In reliance on Defendant's words and conduct, Plaintiff has changed its position to its detriment.

111. As a direct and proximate result of Defendant's misrepresentations and Plaintiff's reliance thereon, Plaintiff has been and continues to be damaged.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

    (a)    compensatory and consequential damages, plus interest;

    (b)    for costs of suit, including attorney's fees;

    (c)    punitive damages; and

    (d)    for such further relief as the Court deems just and equitable.

## TENTH CAUSE OF ACTION
### (Tortious Interference with Contract)

112. Plaintiff repeats the allegations of the foregoing paragraphs of this Complaint as if set forth at length herein.

113. Defendant agreed to provide to Plaintiff exclusive pricing support in connection with Plaintiff's bids for the sale of Defendant's products to New York City, among other things, in exchange for Plaintiff's obtaining NYCMTA's consideration of CJ-4+Infineum for its Qualified Product List.

114.     In reliance on that agreement, Plaintiff invested substantial amounts of time, money and effort into obtaining said consideration.

115.     Defendant purposely failed and refused to provide the technical data and endorsements needed to obtain ultimate NYCMTA approval of CJ-4+Infineum for its Qualified Product List.

116.     At the same time, Defendant surreptitiously supported the bids of other distributors.

117.     In addition, Defendant, directly or indirectly, has communicated with one or more agencies or departments of the City of New York in an effort to interfere with Plaintiff's ability to act as a distributor of oil to New York City and its agencies.

118.     Defendant's actions lacked justification or reasonable excuse.

119.     Defendant has acted with the sole purpose of harming Plaintiff or through wrongful means.  The means employed by Defendant constituted an independent crime or tort, were taken solely out of malice and/or involved the use of extreme or unfair economic pressure.

120.     As a direct and proximate result of Defendant's improper conduct, Plaintiff was unable to bid on and obtain the contract to sell CJ-4+Infineum to NYCMTA.

121.     As a direct and proximate result of Defendant's improper conduct, Plaintiff was unable to bid on and obtain additional contracts for the sale of CJ-4+Infineum and other product provided by Defendant to New York City.

122.     In addition, as a direct and proximate result of Defendant's improper conduct, Plaintiff has incurred economic injury, including losses and/or increased expenses.

123.     As a direct and proximate result of Defendant's misconduct, Plaintiff has been and continues to be damaged.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

        (a)       compensatory and consequential damages, plus interest;

        (b)       for costs of suit, including attorney's fees;

        (c)       punitive damages; and

        (d)       for such further relief as the Court deems just and equitable.

**ELEVENTH CAUSE OF ACTION**
**(Tortious Interference with Prospective Economic Advantage)**

124.    Plaintiff repeats the allegations of the foregoing paragraphs of this Complaint as if set forth at length herein.

125.    Defendant agreed to provide to Plaintiff exclusive pricing support in Plaintiff's bids for the sale of Defendant's products to New York City, among other things, in exchange for Plaintiff's obtaining NYCMTA's consideration of CJ-4+Infineum for its Qualified Product List.

126.    In reliance on that agreement, Plaintiff invested substantial amounts of time, money and effort into obtaining said consideration.

127.    Defendant purposely failed and refused to provide the technical data and endorsements needed to obtain ultimate NYCMTA approval of CJ-4+Infineum for its Qualified Product List.

128.    At the same time, Defendant surreptitiously supported the bids of other distributors.

129.    In addition, Defendant, directly or indirectly, has communicated with one or more agencies or departments of the City of New York in an effort to interfere with Plaintiff's ability to act as a distributor of oil to New York City and its agencies.

130.    Defendant's actions lacked justification or reasonable excuse.

131.     Defendant has acted with the sole purpose of harming Plaintiff or through wrongful means.  The means employed by Defendant constituted an independent crime or tort, were taken solely out of malice and/or involved the use of extreme or unfair economic pressure.

132.     As a direct and proximate result of Defendant's improper conduct, Plaintiff was unable to bid on and obtain the contract to sell CJ-4+Infineum to NYCMTA.

133.     As a direct and proximate result of Defendant's improper conduct, Plaintiff was unable to bid on and obtain additional contracts for the sale of CJ-4+Infineum and other product provided by Defendant to New York City.

134.     In addition, as a direct and proximate result of Defendant's improper conduct, Plaintiff has incurred economic injury, including losses and/or increased expenses.

135.     As a direct and proximate result of Defendant's misconduct, Plaintiff has been and continues to be damaged.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

      (a)     compensatory and consequential damages, plus interest;

      (b)     for costs of suit, including attorney's fees;

      (c)     punitive damages; and

      (d)     for such further relief as the Court deems just and equitable.

**TWELFTH CAUSE OF ACTION**
**(Declaratory Judgment)**

136.     Plaintiff repeats the allegations of the foregoing paragraphs of this Complaint as if set forth at length herein.

137.     As is set forth at length above, Defendant has overcharged Plaintiff for numerous sales to Plaintiff and has submitted erroneous charges to Plaintiff, including for sales to NYCL, which Defendant refuses to reverse.

138.    There is a dispute as to the correct amount of such charges and the charges for which Plaintiff is responsible.

139.    Among other things, there is a dispute as to whether Plaintiff is responsible for the sales to NYCL for which Defendant has attempted to charge Plaintiff, as well as with respect to the amount that should be charged in connection with said sales.

140.    As a direct and proximate result of said breaches, Plaintiff has been and continues to be damaged.

**WHEREFORE**, Plaintiff demands judgment against Defendant for:

(a)    compensatory and consequential damages, plus interest;

(b)    a declaratory judgment with respect to the validity and amount of said disputed charges and whether and to what extent Plaintiff is responsible for same, if at all;

(c)    for costs of suit, including attorney's fees; and

(d)    for such further relief as the Court deems just and equitable.

### <u>JURY DEMAND</u>

Plaintiff Commercial Lubricants, LLC hereby demands a trial by jury with respect to all issues so triable.


Dated: February 26, 2015            RIKER, DANZIG, SCHERER, HYLAND
                                    & PERRETTI LLP
                                     Attorneys for Plaintiff
                                    Commercial Lubricants, LLC


                                    By:    /s/ Jonathan P. Vuotto
                                        Jonathan P. Vuotto
                                        500 Fifth Avenue, 49th Floor
                                        New York, New York  10110
                                        (212) 302-6574

4582047v1