UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

COMMERCIAL LUBRICANTS, LLC,

                            Plaintiff,                    **MEMORANDUM & ORDER**
                                                          14-CV-7483 (MKB)

            v.

SAFETY-KLEEN SYSTEMS, INC.,

                            Defendant.

-------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        Plaintiff and Counterclaim-Defendant Commercial Lubricants, LLC commenced the

above-captioned action against Defendant and Counterclaim-Plaintiff Safety-Kleen Systems,

Inc., alleging that Defendant breached certain contracts relating to the distribution of recycled

oil.  (Compl., Docket Entry No. 1.)  On August 13, 2015, Plaintiff filed a Second Amended

Complaint ("SAC"), asserting claims for, *inter alia*, breach of a "Used Oil Incentive Agreement"

governing the disposal of waste oil (the "Waste Oil Agreement").  (SAC ¶¶ 141–43, Docket

Entry No. 14.)

        Currently before the Court is Defendant's motion for summary judgment as to Plaintiff's

claim for breach of the Waste Oil Agreement.  (Def. Mot. for Partial Summ. J. ("Def. Mot."),

Docket Entry No. 39; Def. Mem. in Supp. of Def. Mot. ("Def. Mem."), Docket Entry No. 39-1;

Def. Suppl. Mem. in Supp. of Def. Mot. ("Def. Suppl. Mem."), Docket Entry No. 54.)  For the

reasons discussed below, the Court grants Defendant's motion.

## I.  Background

        The Court assumes the parties' familiarity with the underlying facts and procedural

history of the case as set forth in its prior decision, *see Commercial Lubricants, LLC v. Safety-*

*Kleen Sys., Inc.*, No. 14-CV-7483, 2017 WL 3432073, at *1 (E.D.N.Y. Aug. 8, 2017), and

provides only a summary of the relevant facts and procedural history below.

### a. Factual background

The facts are undisputed unless otherwise noted.[1]  Defendant is a used oil-refiner, and

Plaintiff is a distributor of recycled oil products in the New York metropolitan area.  (Def. 56.1

¶¶ 1–2.)  On April 11, 2012, Defendant and a company called New York Commercial Lubricants

("NYCL") entered into a contract governing NYCL's distribution of Defendant's recycled oil

product (the "Distributor Agreement").  (*Id.* ¶¶ 3, 11.)  Under the terms of the Distributor

Agreement, NYCL was obligated to purchase an annual minimum amount of Defendant's

product, together with such additional product as NYCL may order.  (Distributor Agreement ¶ 2,

annexed to Def. Mot. as Ex. F, Docket Entry No. 39-8.)  NYCL then resold the product to its

own customers.  (*See* Def. CC. 56.1 ¶¶ 13–16; Pl. CC 56.1 ¶¶ 13–16.)

On July 17, 2013, through an asset purchase agreement, Plaintiff purchased the assets of

NYCL.  (Aff. of Gary Stetz in Opp'n to Def. Mot. ¶ 2, Docket Entry No. 43.)  The assets

included the contractual rights to the Waste Oil Agreement.  Under the Waste Oil Agreement,

Plaintiff agreed to provide Defendant with the waste oil from Plaintiff's various customers in

exchange for payment from Defendant.  (*See* Waste Oil Agreement 2, annexed to Decl. of Scott.

E. Reynolds in Opp'n to Def. Mot. ("Reynolds Decl.") as Ex. N, Docket Entry No. 44-5.)  The

Waste Oil Agreement had an expiration date of December 31, 2014 and consisted of two main

---

[1]  For ease of reference, the Court refers to the filings as follows: Def. Statement of
Material Facts Pursuant to Local R. 56.1 in Supp. of Def. Mot. for Partial Summ. J. ("Def.
56.1"), Docket Entry No. 39-2; Pl. Response to Def. 56.1 ("Pl. 56.1"), Docket Entry No. 45; Def.
Statement of Material Facts Pursuant to Local R. 56.1 in Supp. of Def. Mot. for Summ. J. on
Counter-claims ("Def. CC 56.1"), Docket Entry No. 38-2; Pl. Response to Def. CC 56.1 ("Pl. CC
56.1"), Docket Entry No. 46.

components: (1) a per-gallon commission paid to Plaintiff and (2) an "oil payment" paid either directly to the customer or to Plaintiff. (*Id.* at 1–2.) The Waste Oil Agreement permitted either party to terminate the contract upon sixty days' prior written notice and provided that during the sixty-day period, "both parties will maintain customer services and billing." (*Id.*) In addition, the Waste Oil Agreement provided that "[i]f a dispute arises . . . the matter in dispute shall be referred to binding arbitration in Erie County, New York in accordance with the rules of the American Arbitration Association . . . ." (*Id.* at 2.)

On December 16, 2014, Defendant sent a letter (the "Pay-For-Oil Rate Reduction Letter") addressed to "Dear Valued Customer," stating that "[e]ffective December 21st or as contracts allow, all pay-for-oil rates will be moved to $0.00/gallon. Other terms and conditions of our oil collection service are unchanged." (Pay-For-Oil Rate Reduction Letter, Annexed to Reynolds Decl. as Ex. O, Docket Entry No. 44-5; Pl. 56.1 ¶ 20.) Defendant states that the Pay-For-Oil Rate Reduction Letter terminated the Waste Oil Agreement, (Def. 56.1 ¶ 20); Plaintiff states that the Waste Oil Agreement was not terminated because the letter expressly states that "[o]ther terms and conditions of our oil collection service are unchanged," (Pl. 56.1 ¶ 20). In addition, Plaintiff asserts that the Waste Oil Agreement remained in effect because (1) "the word 'terminated' is noticeably absent" from the Pay-For-Oil Rate Reduction Letter, and (2) Defendant "acknowledges that it has continued to collect used oil from [Plaintiff's] customers . . . ."[2] (*See* Pl. Letter dated Oct. 12, 2016, Docket Entry No. 36.) Nevertheless, Gary Stetz,

---

[2] Although Plaintiff's argument regarding the "other terms and conditions" language in the Pay-For-Oil-Rate Reduction Letter appears in Plaintiff's Rule 56.1 response, (*see* Pl. 56.1 ¶ 21), Plaintiff did not argue in its opposition to Defendant's motion that the Pay-For-Oil Rate Reduction Letter did not terminate the Waste Oil Agreement because (1) it did not contain the word "terminated," or (2) Defendant continued to collect used oil from Plaintiff's customers, (*see* Pl. Mem. in Opp'n to Def. Mot. ("Pl. Opp'n"), Docket Entry No. 41). Instead, Plaintiff

president and owner of Commercial Lubricants, acknowledged in his deposition that he understood the letter to terminate the Waste Oil Agreement because Plaintiff would not refer its clients to Defendant without a per-gallon commission. (Gary Stetz Dep. 224–25, Docket Entry No. 39-4.)

### b. Procedural background

Plaintiff filed this action on December 23, 2014, and filed an Amended Complaint on February 26, 2015. (*See* Compl.; Am. Compl., Docket Entry No. 7.)

### i. Initial discovery dispute

On June 25, 2015, in the course of discovery, Plaintiff requested that Defendant produce "[a]ny and all communications and documents relating to waste oil received by Defendant from . . . Plaintiff's customers since September 1, 2014." (Pl. Letter dated Oct. 4, 2016 at 1, Docket Entry No. 34.)[3] Defendant responded to this request by denying possession of any such documents. (*Id.*)

Plaintiff filed the SAC on August 13, 2015. In the SAC, Plaintiff added a claim for breach of the Waste Oil Agreement, alleging that Defendant breached that agreement by failing to pay commissions due to Plaintiff, and by wrongfully attempting to repudiate the agreement through the Pay-For-Oil Rate Reduction Letter. (SAC ¶¶ 142–43.)

By letter dated November 5, 2015, Plaintiff's counsel followed up on its prior request for

raised these arguments in an October 12, 2016 letter to Judge Mann in connection with Plaintiff's motion to compel discovery. (Pl. Reply dated Oct. 12, 2016, Docket Entry No. 36.)

[3] The Court relies on Plaintiff's October 4, 2016 letter-motion to Judge Mann to compel discovery for the factual summary above. (Pl. Letter dated Oct. 4, 2016, Docket Entry No. 34.) Defendant did not dispute these facts in its letter in opposition to Plaintiff's motion to compel discovery, (*see* Def. Letter dated October 10, 2016, Docket Entry No. 35), nor has it disputed them in any other submissions filed with the Court.

waste oil documents between Defendant and Plaintiff's customers.  (Pl. Letter dated Oct. 4, 2016 at 1–2.)  In the letter, Plaintiff's counsel conveyed its belief that Defendant "continued to collect waste oil from [Plaintiff's] customers post-September 2014 . . . ."  (*Id.*)

After additional follow-up requests, on March 10, 2016, and "contrary to its prior position that it did not have documents responsive to [Plaintiff's] request," Defendant produced responsive documents for the period between August of 2014 through December of 2014, and January of 2015 through February of 2015.  (*Id.* at 2.)

On March 15, 2016, Defendant filed a pre-motion conference letter expressing its intention to, *inter alia*, file a motion for summary judgment and compel arbitration of Plaintiff's claim for breach of the Waste Oil Agreement.  (Def. Pre-Motion Conference Letter, Docket Entry No. 28.)  The Court held a pre-motion conference on June 14, 2016 and set a briefing schedule for Defendant's motion for summary judgment as to some of Plaintiff's claims, and Plaintiff's motion for summary judgment as to Defendant's cross-claims.  (Minute Order dated June 14, 2016.)

On September 8, 2016, prompted by the deposition testimony of Defendant's rebuttal expert witness, Plaintiff's counsel requested that Defendant "clarify whether it is in possession of documents responsive to [Plaintiff's] prior requests for documents relating to used oil collections for the period February 2015 to present . . . ."  (Pl. Letter dated Oct. 4, 2016 at 2.)  Defendant's counsel did not respond to the request.  (*Id.*)  Plaintiff's counsel renewed their request on September 16, 2016.  (*Id.*)  Defendant's counsel replied that same day, stating that he hoped to provide a response later in the day.  (*Id.*)  Defendant's counsel never provided a response.  (*Id.*)  On September 28, 2016, Plaintiff's counsel sent another request.  (*Id.*)  Defendant's counsel responded, stating that if Plaintiff believed the information sought was "relevant and should be

produced," Plaintiff could seek the Court's intervention by filing a motion. (*Id.*) Plaintiff filed a letter-motion on October 4, 2016, seeking to compel production of the documents.

On October 19, 2016, Judge Mann held a telephone conference to discuss the issue. (*See* Min. Entry dated Oct. 19, 2016.) At the conference, Judge Mann granted Plaintiff's motion to compel discovery, and that same day, issued a written order (the "October 19, 2016 Order"). (October 19, 2016 Order, Docket Entry No. 37.) In the October 19, 2016 Order, Judge Mann "express[ed] [her] displeasure that [Defendant], in violation of Fed. R. Civ. P. 34, failed to make clear that it was withholding documents relating to waste oil received from Plaintiff's customers after February of 2015." (*Id.*) Judge Mann ruled, however, that production of the documents would be deferred until the Court ruled on Defendant's motions for summary judgment. (*Id.*)

### ii. Defendant's motions for summary judgment

Defendant filed its motions for summary judgment on October 31, 2016. (*See generally* Def. Mot.; Def. Mem.; Def. CC Mot., Def. CC Mem.) As relevant here, Defendant argued in its motion for partial summary judgment as to Plaintiff's claims that the Court lacks jurisdiction over any claims for damages arising from the Waste Oil Agreement in light of the Waste Oil Agreement's arbitration clause. (Def. Mem. 13.) In the alternative, Defendant argued that Plaintiff cannot recover for any damages incurred on or after February 14, 2015, because the Waste Oil Agreement permits termination by either party with sixty days' notice, and Defendant's December 14, 2014 Pay-For-Oil Reduction Letter acted as a notice of termination. (*Id.* at 14.)

In response, Plaintiff argued that Defendant waived its right to arbitrate the Waste Oil Agreement claim because Defendant has filed responsive pleadings, deposed several witnesses and conducted extensive document discovery since Plaintiff first asserted a claim for breach of

the Waste Oil Agreement in the SAC. (Pl. Mem. in Opp'n to Def. Mot. ("Pl. Opp'n") 23–25,

Docket Entry No. 41.) In its Rule 56.1 statement, Plaintiff contends that the Pay-for-Oil Rate

Reduction Letter was not a notice to terminate the Waste Oil Agreement because the letter states

that "[o]ther terms and conditions of our oil collection service are unchanged," and denies that

Plaintiff's representatives acknowledged at deposition that the Pay-for-Oil Rate Reduction Letter

terminated the Waste Oil Agreement. (Pl. 56.1 ¶¶ 20–21.) Plaintiff's opposition brief does not

respond to Defendant's argument that the letter acted as sixty days' notice to terminate the

agreement, or address the evidence cited by Defendant indicating that Plaintiff's representatives

understood the letter to do so. Plaintiff nevertheless asserts in its opposition brief that Judge

Mann "determined that [Defendant] surreptitiously continued to collect waste oil from

[Plaintiff's] customers" after February of 2015, and "it is more than likely that [Plaintiff] is

entitled to additional payments for waste oil" after February of 2015. (Pl. Opp'n 24–25.)

### iii. The Court's August 8, 2017 decision

By Memorandum and Order dated August 8, 2017, the Court granted in part and denied

in part Defendant's motion for partial summary judgment as to Plaintiff's claims, and denied

Defendant's motion for summary judgment as to Defendant's counterclaims (the "August 2017

Decision"). *See generally Commercial Lubricants, LLC*, 2017 WL 3432073. As relevant here,

in considering the parties' arguments regarding waiver of arbitration, the Court reserved

judgment on Plaintiff's claim for breach of the Waste Oil Agreement. *Id.* at *18–19. In order to

determine whether Defendant had waived its right to arbitrate Plaintiff's breach of the Waste Oil

Agreement, the Court ordered the parties to submit supplemental briefing addressing:

> the nature of the discovery [the parties] exchanged between August
> of 2015 and March of 2016, whether it related to the Waste Oil
> Agreement, whether such discovery would be available to them in
> arbitration, and what prejudice, if any, Plaintiff would suffer should

the Court decide to sever the Waste Oil Agreement claim and refer
it to arbitration.

*Id.* at *19.

### iv.    The parties' supplemental briefing

In its August 25, 2017 supplemental brief, Plaintiff makes five arguments in support of its

assertion that Defendant has waived its right to arbitration.  (Pl. Suppl. Mem. in Opp'n to Def.

Mot. ("Pl. Suppl. Mem."), Docket Entry No. 53.)  First, after Plaintiff filed the SAC on August

13, 2015 and added the claim for breach of the Waste Oil Agreement, Defendant "actively

participated in the [c]ase including as to issues related to the Waste Oil Agreement," for seven

months until March 15, 2016, when Defendant raised the arbitration issue.  (Pl. Suppl. Mem. 2.)

Second, in light of the resources spent "litigating [Defendant's] improper conduct before

Magistrate Judge Mann and briefing the arbitration matter in connection with summary

judgment," permitting Defendant to sever the Waste Oil Agreement claim after wrongfully

withholding documents would "essentially . . . reward[]" Defendant for its conduct and

"effectively . . . nullif[y]" Judge Mann's October 19, 2016 Order granting Plaintiff's motion to

compel production of the documents.  (*Id.* at 2–4.)  Third, "there is no guarantee that an

arbitration would require [Defendant]" to produce the documents Plaintiff is owed.  (*Id.* at 4.)

Fourth, severing the claim for breach of the Waste Oil Agreement risks the possibility that "a

decision will be rendered in this action before a decision is rendered in the arbitration," which

could "irretrievably damage" Plaintiff's financial condition if Defendant were to seek collection

on any judgment before Plaintiff has "the opportunity to prevail in arbitration."  (*Id.* at 4–5.)

Finally, severing the claim for breach of the Waste Oil Agreement would deprive both "the trier

of fact in this [c]ase" and the arbitral forum to which this dispute would be relocated of "the

benefit of understanding the full extent of the parties' relationship," including "the course of

dealings" and "the multifaceted, strategic alliance" between Plaintiff and Defendant.  (*Id.* at 5.)

On September 4, 2017, Defendant responded to each of Plaintiff's arguments.  (Def. Suppl. Mem.)  As to the seven-month delay in raising the arbitration issue, Defendant argues that delay, without more, is insufficient to find that Plaintiff has been prejudiced.  (*Id.* at 2.)  Although not addressing directly Plaintiff's argument that ordering arbitration would reward Defendant for its allegedly improper conduct before Judge Mann during the seven-month period, Defendant argues that Plaintiff cannot argue prejudice based on the discovery taken during this seven-month period, because:

> [i]t is plain that all five of the depositions [that took place during this period] would have taken place regardless of the existence of the Waste Oil Agreement as each deponent was a current or former employee of [Defendant] or [Plaintiff] and each had knowledge of facts pertaining to the twelve other claims [in this litigation], none of which are subject to arbitration.

(*Id.* at 2.)  Third, in response to Plaintiff's argument that "there is no guarantee" it would be entitled to the disputed documents in arbitration, Defendant argues that this is insufficient to establish prejudice because Plaintiff's request for additional documents "can be made and fulfilled in the arbitral forum," where "the modern trend . . . is to permit litigation-like discovery," and "[t]he mere fact the discovery conducted *might* be unavailable at arbitration is insufficient to establish prejudice."  (*Id.* at 3.)  Fourth, in response to Plaintiff's argument regarding the risk that Defendant could prevail and seek collection of a judgment in this action before the conclusion of arbitration, Defendant argues that this does not establish prejudice because each of the alleged remaining breaches "arise from separate and distinct agreements," and Plaintiff "is not entitled to offset" the $243,429 it is allegedly owed from "the more than one million dollars it owes" Defendant as a result of its breach of other agreements.  (*Id.* at 3–4.)  Finally, Defendant argues that neither the Court nor any arbitral forum requires a full

understanding of the business relationship between Defendant and Plaintiff to resolve the remaining disputed issues in this case. (*Id.* at 4.)

### v. Renewed motion to compel

On November 10, 2017, Plaintiff filed a letter-motion to compel before Judge Mann, arguing that Defendant refused to comply with her October 19, 2016 Order. (Pl. Letter dated Nov. 10, 2017, Docket Entry No. 55.) As Plaintiff explained in its letter, after the Court issued the August 2017 Decision, Plaintiff demanded that Defendant produce the waste oil documents for February of 2015 to the present. (*Id.* at 2.) Defendant responded that it was not required to produce any such documents because the Court had not yet ruled on the Waste Oil Agreement claim. (*Id.*) Plaintiff "disagree[d] with [Defendant's] interpretation" of Judge Mann's October 19, 2016 Order, "given the prejudice to [Plaintiff] in the event [the Court] orders the Waste Oil Agreement claim to arbitration," and requested that Judge Mann order the documents produced. (*Id.*)

In its November 14, 2017 response, Defendant argued that because Judge Mann's October 19, 2016 Order stated that production of the relevant documents was "deferred until after the District Court rules on the summary judgment motion," Defendant was not yet required to produce the documents since the Court reserved judgment on the Waste Oil Agreement claim. (Def. Letter dated Nov. 14, 2017 at 2, Docket Entry No. 56.) Defendant also asserted that "any documents related to the collection of Waste Oil after February 2015 are irrelevant as [Defendant] terminated the Waste Oil Agreement with [Plaintiff] effective February 14, 2015." (*Id.*)

### vi.  Judge Mann's December 28, 2017 Memorandum and Order

By Memorandum and Order dated December 28, 2017, Judge Mann denied Plaintiff's motion to compel without prejudice, pending a decision from the Court on Plaintiff's claim for breach of the Waste Oil Agreement (the "December 2017 Decision").  (Mem. and Order dated Dec. 28, 2017, Docket Entry No. 58.)

In the December 2017 Decision, Judge Mann discussed the October 19, 2016 telephone conference and her October 19, 2016 Order.  (*Id.* at 1–2.)  During the conference, Judge Mann "concluded that [D]efendant had violated Rule 34 of the Federal Rules of Civil Procedure by failing to make clear in responding to [P]laintiff's discovery demands that it was withholding responsive information that postdated February 2015," and "without ruling on admissibility . . . granted plaintiff's motion to compel, finding that the documents were discoverable, notwithstanding the parties' as-yet unresolved dispute as to whether the Waste Oil Agreement had been terminated." (*Id.*)  Judge Mann noted that she nevertheless deferred production of these documents until after the Court ruled on the summary judgments motions, in light of (1) "the burden entailed in collecting the demanded information," and (2) "[P]laintiff's acknowledgment that the disputed documents, which related to damages, were not needed in connection with the summary judgment motions . . . ." (*Id.*)

In light of this procedural history, Judge Mann "swiftly rejected" Plaintiff's motion and stated:

> While the . . . Minute Entry . . . deferred [D]efendant's production of the damages-related documents "until after the District Court rules on the summary judgment motions," the intent of that ruling, as expressly acknowledged by both parties during that proceeding, was to await a decision by the District Court with respect to the purported termination of the Waste Oil Agreement.  As Judge Brodie has reserved decision on defendant's challenges to [the Waste Oil Agreement claim], the event that was to trigger

11

> defendant's obligation to produce the challenged documents has not
> yet occurred.

(*Id.* (alteration and internal citation omitted)).  Judge Mann further rejected Plaintiff's argument that it would be "irreparably prejudiced" if the claim were referred to arbitration before Defendant is required to produce the relevant documents, reasoning that: (1) "[P]laintiff failed to raise [this argument] a year ago in agreeing to defer production of the documents," and (2) Plaintiff raised the risk of prejudice to the Court in its supplemental briefing.  (*Id.* at 4.)

## II. Discussion

### a. Standard of review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018); *see also Cortes v. MTA NYC Transit*, 802 F.3d 226, 230 (2d Cir. 2015).  The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists."  *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)).  A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.  The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment.  *Id.*  The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the nonmoving party, a rational juror could find in favor of that party."  *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b. Plaintiff's claim for breach of the Waste Oil Agreement is covered by the arbitration provision

The parties do not dispute that Plaintiff's claim for damages from Defendant's alleged breach of the Waste Oil Agreement is covered by the arbitration clause in the agreement.[4] In light of the clause's plain language, the Court finds that neither party could raise a serious dispute as to this issue. *See Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391, 395 (2d Cir. 2015) ("In light of the strong federal policy in favor of arbitration, the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." (quoting *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l*, 198 F.3d 88, 99 (2d Cir. 1999))). Accordingly, the Court finds that the Waste Oil Agreement's arbitration clause does cover the dispute as to the breach of the Waste Oil Agreement. The Court must therefore order arbitration of Plaintiff's claim on this basis unless Defendant has waived the right to arbitrate the claim.

### c. Defendant has waived arbitration

Plaintiff asserts that Defendant has waived arbitration and Plaintiff would be prejudiced by Defendant's gamesmanship if the Court were to reach a contrary conclusion. (Pl. Mem. 23–

---

[4] The Waste Oil Agreement's arbitration provision provides:
> [i]f a dispute arises between Safety-Kleen and Metro Lube that the parties involved in the matter are unable to resolve, then the matter in dispute shall be referred to binding arbitration in Erie Count, New York in accordance with the rules of the American Arbitration Association, and the judgment upon the award rendered by the Arbitrator may be entered in any court having jurisdiction thereof.

(Waste Oil Agreement 2.)

25; Pl. Suppl. Mem.)  Defendant contends that Plaintiff cannot establish prejudice, a necessary prerequisite to finding waiver.  (Def. Suppl. Mem.)

"Federal policy strongly favors arbitration and waiver of a right to arbitrate is not lightly inferred."  *Tech. in P'ship, Inc. v. Rudin*, 538 F. App'x. 38, 39 (2d Cir. 2013).  "This preference for arbitration '[h]as led to its corollary that any doubts concerning whether there has been a waiver are resolved in favor of arbitration.'"  *PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 107 (2d Cir. 1997) (quoting *Leadertex Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995)).  Nevertheless, a party waives its right to arbitration "when it engages in protracted litigation that prejudices the opposing party."  *Tech. in P'ship*, 538 F. App'x at 39 (quoting *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000)). The question of whether a party's pretrial conduct amounts to waiver of the defense of arbitration is a legal question to be decided by the court.  *Leadertex*, 67 F.3d at 25; *see Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir. 1985) ("[T]he question of waiver of arbitration is one of law . . .").

"In determining whether a party has waived its right to arbitration by expressing its intent to litigate the dispute in question," courts consider the following three factors: "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." *Sutherland v. Ernst & Young, LLP*, 600 F. App'x 6, 7–8 (2d Cir. 2015) (internal quotation marks omitted) (quoting *La Stadium & Expo. Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010)).  "There is no rigid formula or bright-line rule for identifying when a party has waived its right to arbitration; rather, the above factors must be applied to the specific context of each particular case."  *Id.* (quoting *La Stadium & Expo. Dist.*, 626 F.3d at 159).

"The key to a waiver analysis is prejudice. Waiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated." *Id.* at 8 (quoting *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105 (2d Cir. 2002)); *see also Leadertex*, 67 F.3d at 25 ("Although litigation of substantial material issues may amount to waiver, delay in seeking arbitration does not create a waiver unless it prejudices the opposing party." (citation omitted)). The Second Circuit has recognized "two types of prejudice: substantive prejudice and prejudice due to excessive cost and time delay." *Sutherland*, 600 F. App'x at 7–8 (citing *Thyseen*, 310 F.3d at 105). "Prejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration." *Id.* at 8 (quoting *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991)). In contrast to substantive prejudice, prejudice may also "be found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense." *Id.* (quoting *Kramer*, 943 F.2d at 179); *S&R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 83–84 (2d Cir. 1998) ("Prejudice results 'when a party seeking to compel arbitration engages in discovery procedures not available in arbitration, makes motions going to the merits of an adversary's claims, or delays invoking arbitration rights while the adversary incurs unnecessary delay or expense.'" (quoting *Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir. 1993))); *see also NV Petrus SA*, No. 14-CV-3138, 2017 WL 1831096, at *2–3 (E.D.N.Y. May 4, 2017) ("Prejudice 'refers to the inherent unfairness — in terms of delay, expense, or damage to a party's legal position — that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue.'" (quoting *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 134 (2d Cir. 1997))). A court will not find waiver where "delay in trial proceedings was not accompanied by substantial

motion practice or discovery." *Sutherland*, 600 F. App'x at 8 (quoting *Thyssen, Inc.*, 301 F.3d at 105).

Guided by these considerations, the Court finds that Defendant has waived its right to arbitrate the Waste Oil Agreement claim.

### i. Seven-month delay

While Plaintiff argues that Defendant waited seven months from the time Plaintiff filed the SAC to raise the arbitration issue, (Pl. Suppl. Mem. 2), it is well established that delay, standing alone, cannot support a finding of waiver of the right to arbitrate.[5] *See Rush*, 779 F.2d at 887 ("It is beyond question that defendants' delay in seeking arbitration during approximately eight months of pretrial proceedings is insufficient by itself to constitute a waiver of the right to arbitrate . . . ." (citing *Carcich v. Rederi A/B Nordie*, 389 F.2d 692, 696 (2d Cir. 1968))); *see also Thyssen, Inc.*, 310 F.3d at 105 ("This Circuit has refused to find waiver in a number of cases where delay in trial proceedings was not accompanied by substantial motion practice or discovery." (collecting cases)); *cf. Leadertex*, 67 F.3d at 26 (seven-month delay, during which defendant vigorously pursued discovery, "strongly implies [the party] forfeited its contractual right to compel arbitration"). Rather, the extent of delay must be considered "in conjunction with (1) the amount of litigation that occurred" during the delay, and "(2) any proof that [the

---

[5] The Court notes that Defendant's pre-motion conference letter raising the arbitration issue states that Plaintiff "recently identified" the Waste Oil Agreement "during discovery." (Def. Pre-motion Conference Letter dated Mar. 15, 2016.) To the extent Defendant is suggesting that Plaintiff's "recent[] identfi[cation]" of the Waste Oil Agreement caused Defendant's delay in raising this issue, this argument is meritless, as Defendant is a party to the Waste Oil Agreement and is therefore presumed to have had knowledge of the agreement's contents, including the arbitration clause. *See Tech. in P'ship, Inc. v. Rudin*, 894 F. Supp. 2d 274, 279 (S.D.N.Y. 2012) (finding that the defendants "had access to and knowledge of [the relevant] documents and was on notice of the arbitration clause" and rejecting the defendants' argument that delay was caused by the need to confirm the agreement counterparty's understanding of the contract), *aff'd* 538 F. App'x 38 (2d Cir. 2013).

party opposing arbitration] was prejudiced by [the other party's] conduct during that period."

*PPG Indus., Inc.*, 128 F.3d at 108 (citing *Leadertex*, 67 F.3d at 25); *Matter of Arbitration*

*Between S & R Co. of Kingston & Latona Trucking, Inc.*, 984 F. Supp. 95, 103 (N.D.N.Y. 1997)

("Although delay alone is generally insufficient to deny a petition to arbitrate, it is a relevant in

determining whether a party has been prejudiced." (first citing *Rush,* 779 F.2d at 887); and then

citing *Demsey & Ass. Inc. v. S.S. Sea Star,* 461 F.2d 1009, 1018 (2d Cir. 1972); and then citing

*Cotton*, 4 F.3d at 179)), *aff'd sub nom. S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d

80 (2d Cir. 1998).

### ii.    Amount of litigation to date

In assessing the amount of litigation for purposes of a waiver analysis, courts find

relevant, *inter alia*, any motion practice engaged in by the parties, and the extent of discovery the

parties have exchanged.  *See, e.g., Tech. in P'ship, Inc.*, 538 F. App'x at 39 (affirming district

court's finding of waiver where the party asserting waiver "had to defend two substantive

motions to dismiss, then produce its witness for deposition, comply with an extensive document

request, and participate in extended discovery disputes"); *S & R Co. of Kingston*, 159 F.3d at 83

(observing that the waiver analysis includes consideration of "the amount of litigation (including

exchanges of pleadings, any substantive motions, and discovery)").

Since filing the SAC,[6] Defendant has filed an answer,[7] and the parties have exchanged

---

[6]  Because Plaintiff did not put Defendant on notice of its claim for breach of the Waste Oil Agreement until it filed the SAC in August of 2015, the Court's assessment of litigation activity starts with the filing of the SAC, as Plaintiff's claim for breach of the Waste Oil Agreement is the only arbitrable claim in the litigation, and Defendant could not seek to arbitrate a claim that did not exist prior to August of 2015.

[7]  Plaintiff asserts that Defendant's answer "did not reference the arbitration clause." (Pl. Suppl. Mem. 2.)  This fact alone is insufficient to establish waiver. *See Rush v. Oppenheimer &*

document and interrogatory requests and responses. (Joint Status Report, Docket Entry No. 26.) The parties also engaged in extensive settlement negotiations which were ultimately unsuccessful, and participated in court-annexed mediation, which also failed. (*Id.*)

Since the filing of the SAC Plaintiff took three depositions of Defendant's current and former employees before Defendant raised the issue of arbitration, and took two additional depositions after Defendant raised the issue of arbitration. (*See* Pl. Suppl. Mem. 2; Def. Suppl. Mem. 3.) For its part, Defendant has taken two depositions: Joe Ioia, former owner of NYCL, and Stetz, Commercial Lubricants' president and owner. (*Id.*)

Defendant argues that Plaintiff was not prejudiced by the discovery taken during the seven-month period because Plaintiff's first three depositions revealed information that "did not pertain to the Waste Oil Agreement but was relevant to the other claims pending in this litigation," and although Plaintiff's two additional depositions involved questions regarding the arbitration issue, these depositions are nevertheless "irrelevant" to the Court's waiver analysis, because they took place after Plaintiff was on notice of Defendant's efforts to compel arbitration of the Waste Oil Agreement claim. (Def. Suppl. Mem. 2–3.)

Plaintiff argues it was prejudiced because, *inter alia*, Stetz "was deposed at length concerning [the] claim for breach of the Waste Oil Agreement." (Pl. Suppl. Mem. 2.) Defendant contends that it had to take the depositions of Ioia and Stetz "in order to discover information" pertinent to other claims in this litigation. (Def. Suppl. Mem. 2.) Defendant further asserts that

---

*Co.*, 779 F.2d 885, 889 (2d Cir. 1985) ("Nor does defendants' service of an answer that contained thirteen affirmative defenses but failed to raise the agreement to arbitrate, constitute a waiver of arbitration. Absent a demonstration of prejudice by [the plaintiff], the bare fact that the defendants filed an answer is inadequate by itself to support a claim of waiver of arbitration." (citing *ITT World Commc'ns, Inc. v. Commc'n Workers of Am., AFL–CIO*, 422 F.2d 77, 82 (2d Cir. 1970))); *see also Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105–06 (2d Cir. 2002) (same).

"although [it] inquired into the Waste Oil Agreement at Ioia's and Stetz's depositions, the majority of the testimony elicited about the Waste Oil Agreement took place during Stetz's second deposition, on July 19, 2016," four months after Defendant indicated that it would seek to arbitrate the claim. (*Id.* at 2–3.)

### 1. Substantive motion practice

The lack of substantive motion practice weighs against a finding of waiver. *See Tech. in P'ship, Inc.*, 538 F. App'x at 39. Although Plaintiff protests that it was forced to "brief[] the arbitration issue along with the underlying merits of the Waste Oil Agreement claim in opposition to [Defendant's] motion for summary judgment," (Pl. Suppl. Mem. 3), the Court is not persuaded by this argument because (1) Plaintiff did not brief the merits of the claim for breach of the Waste Oil Agreement, and (2) Plaintiff's opposition to Defendant's request to compel arbitration was served nine months after Defendant indicated its intent to enforce the arbitration provision.

Plaintiff's opposition brief contains no briefing of the "underlying merits of the Waste Oil Agreement claim." (*See* Pl. Opp'n 23–25.) In addition, Plaintiff did not respond to Defendant's argument that it terminated the Waste Oil Agreement with its Pay-For-Oil Rate Reduction Letter — the only merits-based argument relating to the Waste Oil claim addressed in Defendant's motion.

As to Plaintiff's argument that it was forced to brief the arbitration issue, Plaintiff's opposition was served December 14, 2016, nine months after Defendant indicated its intent to invoke the arbitration clause. (*See* Docket Entry Nos. 41–46.) During the telephone conference before Judge Mann on October 19, 2016, Plaintiff's counsel expressly represented that "the disputed documents . . . were not needed in connection with the summary judgment motions." (Mem. and Order dated Dec. 28, 2017 at 2.) Plaintiff therefore cannot now rely on the summary

judgment motion practice to support its argument that the litigation activity in this case militates in favor of finding waiver.

### 2. Discovery and other litigation activity

Nevertheless, the Second Circuit has expressly rejected any rule "that a party must have made dispositive motions on the merits in order to be deemed to have waived arbitration," finding "no case that supports the argument that such motions are required before waiver can be found." *S & R Co. of Kingston*, 159 F.3d at 84. Aside from Defendant's summary judgment motions, the litigation in this case "was hardly dormant" during the seven-month period between the filing of the SAC and Defendant's pre-motion conference letter raising the issue of arbitration. *See Louisiana Stadium & Exposition Dist.*, 626 F.3d at 159–60 (observing that no discovery took place during eleven-month delay, but "the litigation was hardly dormant" and the "facts demonstrate[d] that the parties spent a significant amount of time and expense litigating" before arbitration was sought). During this period, the parties "propounded and responded to various discovery requests," which discovery was "largely complete," according to the parties' status report submitted one month before Defendant raised the arbitration issue. (Joint Status Report 2.) As discussed above, the parties also engaged in active settlement negotiations,[8] took several depositions when such negotiations failed, and participated in court-annexed mediation,[9]

---

[8] *See S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 84 (2d Cir. 1998) (affirming district court's finding of waiver based on, *inter alia*, "extensive discovery requests" and "two settlement conferences"); *Satcom Int'l Grp. PLC v. Orbcomm Int'l Partners, L.P.*, 49 F. Supp. 2d 331, 340 (S.D.N.Y.) (considering settlement conference in assessing amount of litigation), *aff'd*, 205 F.3d 1324 (2d Cir. 1999).

[9] *See NV Petrus SA v. LPG Trading Corp.*, No. 14-CV-3138, 2017 WL 1831096, at *3 (E.D.N.Y. May 4, 2017) (considering, *inter alia*, the parties' participation in court-sponsored mediation and concluding that the defendants "actively engaged in 'protracted litigation'").

all in the span of a few months.  The discovery conducted by the parties was, by Defendant's

own description, "significant."[10]  (*See* Joint Mot. for Protective Order, Docket Entry No. 27.)

Defendant's description is consistent with the information currently before the Court; Defendant

may not now attempt to retreat from its description of the status of discovery in order to argue

that it has not waived arbitration.  This factor therefore weighs in favor of finding that Defendant

waived its right to arbitrate this dispute.

### iii.  Prejudice

Notwithstanding the above, the first two factors of the Court's analysis do not resolve the

issue, because "[t]he key to a waiver analysis is prejudice"; without prejudice, there can be no

waiver of the right to arbitrate a dispute.  *Sutherland*, 600 F. App'x at 8 (quoting *Thyssen,*

*Inc.*, 310 F.3d at 105); *see In re Enron Corp.*, 364 B.R. 489, 511 (Bankr. S.D.N.Y. 2007) ("[I]t is

the presence or absence of prejudice that is determinative of the issue of waiver." (citing *Lubrizol*

*Int'l, S.A. v. M/V Stolt Argobay*, 562 F. Supp. 565, 573 (S.D.N.Y. 1982))).  Moreover,

"[p]rejudice is not presumed based on the timing of [an] arbitration demand and . . . participation

in litigation [by the party seeking arbitration] — *i.e.,* the first two prongs of the three-part waiver

inquiry-standing alone."  *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. NCR Corp.*, 376 F.

App'x 70, 72 (2d Cir. 2010).  Rather, "[p]rejudice results 'when a party seeking to compel

arbitration engages in discovery procedures not available in arbitration, makes motions going to

the merits of an adversary's claims, or delays invoking arbitration rights while the adversary

---

[10]  In its briefing, Defendant insists that such discovery pertained overwhelmingly to the non-arbitrable claims at issue in this case, but while this argument is relevant to the question of whether Plaintiff suffered prejudice as a result of such discovery, it does not negate the fact that the discovery took place.  *See Kramer v. Hammond*, 943 F.2d 176, 180 (2d Cir. 1991) (discussing in the context of "prejudice in terms of expense or delay" prior decisions where "the number of non-arbitrable issues more than justified the litigation that preceded the demand for arbitration").

incurs unnecessary delay or expense.'" *S&R Co. of Kingston*, 159 F.3d at 83–84 (quoting *Cotton*, 4 F.3d at 179). Stated differently, "[p]rejudice . . . refers to the inherent unfairness — in terms of delay, expense, or damage to a party's legal position — that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*, 376 F. App'x at 72 (quoting *In re Crysen*, 226 F.3d at 162–63). "Prejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration." *Sutherland*, 600 F. App'x at 8 (quoting *Kramer*, 943 F.2d at 179).

Although Defendant's efforts do not reflect an attempt to relitigate a motion on the *merits*, severing the arbitration claim would damage Plaintiff's legal position and cause substantive prejudice. After repeated follow-up requests, and motion practice before Judge Mann, Plaintiff has established its entitlement[11] to documents in Defendant's possession relating to waste oil received from Plaintiff's customers after February of 2015.[12] In view of this,

---

[11] The Court acknowledges Judge Mann's observation that her October 19, 2016 Order did not "rul[e] on [the] admissibility" of these documents. (Dec. 28, 2017 Order.)

[12] The fact that the actual motion to compel production of these documents was not made until after Defendant raised the issue of arbitration is of no avail in view of the fact that the issue, raised a mere five days after Defendant revealed the existence of additional withheld documents, suggests that Defendant may well have anticipated further dispute, and — judging from its unpersuasive arguments in opposition to Plaintiff's motion to compel — an adverse ruling for its failure to produce the documents in the first instance. (*See* Def. Letter dated Oct. 10, 2016 (opposing Plaintiff's motion to compel by arguing that "[t]he discovery deadline in this matter has expired" while not disputing that the initial request was made within the discovery deadline, and further opposing the "unduly burdensome" production of the purportedly "irrelevant" information, despite having failed to assert such objections during discovery)); *cf. LG Elecs., Inc. v. Wi-Lan USA, Inc.*, 623 F. App'x 568, 569 (2d Cir. 2015) (finding lack of prejudice where "[a]t the time of the arbitration demand, no rulings on [the plaintiff's] substantive motions had been issued *or foreshadowed*, nor has [the plaintiff] shown that the demand compromised its legal position in any way" (emphasis added)); *Anwar v. Fairfield Greenwich Ltd.*, 863 F. Supp. 2d 346, 349 (S.D.N.Y. 2012) (finding lack of prejudice where "there is no indication that this is 'an

Defendant should not be permitted to now, after violating the Federal Rules of Civil Procedure, invoke the arbitration clause to negate a ruling in Plaintiff's favor. *See Tech. in P'ship, Inc.*, 538 F. App'x at 39–40 (affirming district court's finding of waiver considering, *inter alia*, "the prejudice to [the plaintiff] in moving to the arbitration forum while awaiting reciprocal discovery from the [defendants]"); *Burns v. Imagine Films Entm't, Inc.*, 165 F.R.D. 381 (W.D.N.Y. 1996) ("Plaintiffs will suffer economic and substantive prejudice by Defendants' delay in seeking arbitration. . . . Defendants should not be able to avoid the effects of the sanction already imposed, nor should they be able to avoid any future sanctions by resorting to arbitration." (citing *Kramer*, 943 F.2d at 179)); *cf. Bank of Am., N.A. v. Ocean Performance, Inc.*, No. 10-CV-1829, 2013 WL 943743, at *3 (D. Conn. Mar. 11, 2013) (finding prejudice from undue delay and expense in light of, *inter alia*, the defendant's "fail[ure] to respond to Plaintiff's discovery requests, necessitating Plaintiff's filing of a motion to compel discovery" (citing *Cotton,* 4 F.3d at 180)).[13]

Defendant argues that severing the claim before producing the disputed documents would

_____

instance in which a party sensing an adverse court decision [is, in effect, allowed] a second chance in another forum'" or "any indication of bad faith" (quoting *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 890 (2d Cir. 1985))).

[13] The Second Circuit has held that arbitration is not waived where a party moves to dismiss a complaint containing both arbitrable and nonarbitrable claims, and, after the motion is denied, subsequently seeks to compel arbitration of the arbitrable claims. *See Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 463 (2d Cir. 1985) (concluding that the defendant did not waive arbitration by filing a motion to dismiss "an intricate complaint, setting forth numerous claims outside the scope of, though partially related to, the arbitrable claims" where "most" of the twenty-eight claims were nonarbitrable). In contrast to these cases, however, Defendant's conduct which the Court finds constitutes waiver — its failure to provide discoverable waste oil documents and Judge Mann's adverse ruling — relates predominantly, if not exclusively, to a single, arbitrable claim.

cause no prejudice to Plaintiff because, "[e]ven if the rules of arbitration do not specifically permit discovery, the modern trend in arbitration is to provide for depositions and the exchange of documents just as in litigation," and the fact that such documents "*might* be unavailable at arbitration" is insufficient to establish prejudice. (Def. Suppl. Mem. 3.) Defendant also argues that "[t]o the extent [Plaintiff] alleges that [Defendant] must produce additional documents, such a request can be made and fulfilled in the arbitral forum." (*Id.*)

These arguments are not persuasive. Defendant offers little authority and no analysis of the rules of the American Arbitration Association to support its claim that "the modern trend" in arbitration is to permit litigation-like discovery.[14] Regardless, these contentions ignore the fact that Plaintiff's entitlement to the additional documents is not, as Defendant asserts, an "allegation" — Judge Mann has ordered Defendant to produce the documents but stayed the order pending a decision from the Court on the issue of arbitration. (October 19, 2016 Order.)[15]

---

[14] Relatedly, the Court notes that neither party has adequately responded to the Court's directive to brief whether the discovery that has been exchanged in this case "would be available to them in arbitration." *Commercial Lubricants, LLC*, 2017 WL 3432073, at *19. Moreover, there is at least some authority suggesting that the Court should not simply assume that discovery in the arbitral forum would be sufficiently similar to discovery in this litigation. *See Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 212 (3d Cir. 2010) ("It is well recognized that 'discovery generally is more limited in arbitration than in litigation,' and that, as an 'important counterweight, arbitrators are not bound by the rules of evidence.'" (first quoting *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 286 (4th Cir. 2007); and then quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991))).

[15] The parties agreed to defer production of the documents. As Judge Mann stated in her December 28, 2017 Order, "[d]efense counsel conceded [during the October 19, 2016 conference] that if the District Court rejected defendant's position as to the termination date, defendant would have no basis to object to plaintiff's document demand." (Mem. and Order dated Dec. 28, 2017 at 2.) However, the Court cannot decide the question of whether and when Defendant terminated the Waste Oil Agreement without first deciding whether Defendant waived arbitration, because whether the agreement has been terminated is a question that, under the broad wording of the Waste Oil Agreement's arbitration clause, would be properly reserved for the arbitrator. *See Rochdale Vill., Inc. v. Pub. Serv. Emp. Union, Local No. 80, Int'l Bhd. of*

Moreover, the question before the Court is not whether the appropriate forum does or does not provide a particular tool of discovery, but whether depriving a party that has *already* demonstrated — in *this* forum — its entitlement to documents from the benefit of that victory would "damage" the party's "legal position" such that it would reflect "inherent unfairness." *See Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*, 376 F. App'x at 72 (quoting *In re Crysen*, 226 F.3d at 162–63; *Doctor's Assocs., Inc.*, 107 F.3d at 134. The Court concludes that it would.

The Court is mindful that "[t]here is no rigid formula or bright-line rule for identifying when a party has waived its right to arbitration," and the above factors must be applied "to the specific context" of each case. *Sutherland*, 600 F. App'x at 7–8 (quoting *La Stadium & Expo. Dist.*, 626 F.3d at 159). Considering the prejudice Plaintiff would suffer if the parties are required to arbitrate this claim, in addition to the extensive discovery discussed above, the Court finds that Defendant has waived the right to arbitrate the dispute regarding its purported breach

---

*Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 605 F.2d 1290, 1295 (2d Cir. 1979) ("If a court finds that the parties have agreed to submit to arbitration disputes 'of any nature or character,' or simply 'any and all disputes,' all questions, including those regarding termination, will be properly consigned to the arbitrator . . . ." (citations omitted)); *E & B Giftware, LLC v. Kinsbourne*, No. 14-CV-4709, 2015 WL 2330469, at *2 (S.D.N.Y. May 12, 2015) ("When the parties' agreement contains a broad arbitration clause, the arbitrator resolves any questions with respect to contract termination." (first citing *Peerless Imps., Inc. v. Wine, Liquor & Distillery Workers Union Local One,* 903 F.2d 924, 929 (2d Cir. 1990); and then citing *McAllister Bros., Inc. v. A & S Transp. Co.*, 621 F.2d 519, 522 (2d Cir. 1980); and then citing *Conn. Gen. Life Ins. Co. v. Houston Scheduling Servs., Inc.*, 2013 WL 4647252, at *10 (D. Conn. Aug. 29, 2013))); *see also Litho Prestige, Div. of Unimedia Grp., Inc. v. News Am. Pub., Inc.*, 652 F. Supp. 804, 811 (S.D.N.Y. 1986) ("To hold that defendant could not withdraw from this relationship because such conduct would breach the termination clause would be contrary to the rule in this circuit requiring that an arbitrator decide all breach of contract questions where the contract contains a broad arbitration clause." (citations omitted)). Therefore, for purposes of its prejudice analysis, the Court does not consider Defendant's assertion that the disputed documents are irrelevant because they post-date the Waste Oil Agreement's termination, as doing so within the context of a waiver analysis would assume the conclusion that Defendant has waived the right to have the issue as to the termination date decided by the arbitral forum.

of the Waste Oil Agreement.

### d. The Waste Oil Agreement was terminated effective February 14, 2015

Defendant argues in the alternative that the Pay-for-Oil-Reduction Letter served as notice of termination of the Waste Oil Agreement, and the Waste Oil Agreement was therefore terminated effective February 14, 2015, precluding Plaintiff's claims to damages after this date.[16] (Def. Mem. 14.) Although not addressing the argument in its opposition brief, in its other filings, Plaintiff has denied that its representatives acknowledged the Waste Oil Agreement's termination; and argued that the Waste Oil Agreement was not terminated because (1) the Pay-For-Oil Rate Reduction Letter states that "[o]ther terms and conditions of [Defendant's] oil collection service are unchanged," (2) "the word 'terminated' is noticeably absent" from the Pay-For-Oil Rate Reduction Letter, and (3) Defendant "acknowledges that it has continued to collect used oil from [Plaintiff's] customers even though it purportedly 'terminated' the Waste Oil Agreement." (*See* Pl. 56.1 ¶¶ 20–21; Pl. Letter dated Oct. 12, 2016.)

"When interpreting a contract, the intention of the parties should control, and the best evidence of intent is the contract itself." *Cont'l Ins. Co. v. Atl. Cas. Ins. Co.,* 603 F.3d 169, 180 (2d Cir. 2010) (quoting *Rothstein v. Am. Int'l Grp., Inc.*, 837 F.3d 195, 205 (2d Cir. 2016)); *see also Biremis, Corp. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 11-CV-4934, 2012 WL 760564, at *5 (E.D.N.Y. Mar. 8, 2012) ("As with any issue of contract interpretation, the court begins with the language of the contracts at issue."); *Dittman v. Dyno Nobel, Inc.*, No. 97-CV-1724, 2000 WL 151950, at *2 (N.D.N.Y. Feb. 10, 2000) ("Contract interpretation begins with the plain language of the contract."). There is no dispute that the Waste Oil Agreement

---

[16] Because the Court has concluded that Defendant waived arbitration, the Court may consider Defendant's termination argument. *See supra* n.18; *Rochdale Vill., Inc.*, 605 F.2d at 1295; *E & B Giftware, LLC*, 2015 WL 2330469, at *2; *see also Litho Prestige, Div. of Unimedia Grp., Inc.*, 652 F. Supp. at 811.

permitted either party to terminate the contract upon sixty days' prior written notice. (Waste Oil Agreement 1.)

The Court finds that the Pay-For-Oil Rate Reduction Letter served as notice of termination of the Waste Oil Agreement, and that the Waste Oil Agreement was therefore terminated effective February 14, 2015. Stetz testified at his deposition that he understood the Pay-For-Oil Rate Reduction Letter to terminate the Waste Oil Agreement:

> COUNSEL: So, is it your understanding that there is some other language that you were relying on, which requires [sixty] days notice to change the pricing?
>
> STETZ: No, that's where we make — lead me to believe that you have to give me [sixty] days — Safety-Kleen has to give me [sixty] day notice.
>
> COUNSEL: But this says "termination," right?
>
> STETZ: Correct.
>
> COUNSEL: Did you take the letter . . . as an act of terminating the contract?
>
> STETZ: I do.
>
> COUNSEL: You do?
>
> STETZ: I do. There's no more consideration.

(Gary Stetz Dep. 224–25.)

Plaintiff failed to address this issue in its opposition brief and has arguably waived any claim for damages after February 14, 2015. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.").

None of Plaintiff's arguments support the conclusion that the Waste Oil Agreement remained in force sixty days after Defendant served the Pay-For-Oil Rate Reduction Letter. As an initial matter, while Plaintiff's 56.1 statement denies that Stetz acknowledged that the Pay-

For-Oil Rate Reduction Letter terminated the Waste Oil Agreement, (*see* Pl. 56.1 ¶ 21), Plaintiff's denial cannot refute the uncontroverted testimony of Stetz acknowledging that he understood the Pay-For-Oil Rate Reduction Letter to terminate the Waste Oil Agreement.

Moreover, the documents Plaintiff relies on to dispute Stetz's acknowledgment — Defendant's Answer to the Amended Complaint and Counterclaims — do not relate to the Waste Oil Agreement and therefore cannot support its argument. (Pl. Resp. to Def. 56.1 ¶ 21, Docket Entry No. 45 (citing Def. Answer and Counterclaims to Am. Compl. and Counterclaims, annexed to Reynolds Decl. as Ex. LL, Docket Entry Nos. 45-11 and 45-12).) As discussed *supra*, Plaintiff's Amended Complaint did not contain a claim for breach of the Waste Oil Agreement, and Defendant's Answer consequently includes no information relevant to this issue. Similarly, Defendant's Counterclaim and the attached documents relate to breach of the Distributor Agreement and contain no relevant information about the Waste Oil Agreement. *See Potash v. Fla. Union Free Sch. Dist.*, 972 F. Supp. 2d 557, 564 (S.D.N.Y. 2013) (observing that the plaintiff's Rule 56.1 statement was "deficient" because, *inter alia*, it "purport[s] to deny facts properly set forth by Defendants' 56.1 Statement with a citation to evidence that does not support Plaintiff's purported denial").

In addition, Plaintiff's argument that the Pay-For-Oil Rate Reduction Letter did not serve as notice of termination because it does not contain the word "termination" is also unpersuasive, as the Waste Oil Agreement does not prescribe a specific process or term to comply with the notice requirement. *See Brockhaus v. Gallego Basteri*, 188 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) ("[W]here the contract does not require any particular language in the notice of termination, there are no magic words that need to be uttered as long as the notice evinces clear intent to terminate." (citing *G.B. Kent & Sons, Ltd. v. Helena Rubinstein, Inc.*, 47 N.Y.2d 561,

561 (1979))); *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 362 (S.D.N.Y. 2012) ("[T]he Second Circuit has declined 'to construe the notice provision as if it were a common law pleading requirement under which every slip would be fatal.'" (first quoting *Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 925 (2d Cir. 1977); and then citing *RBFC One, LLC v. Zeeks, Inc.,* 367 F. Supp. 2d 604, 617 (S.D.N.Y. 2005))).

Lastly, while the Pay-For-Oil Rate Reduction Letter states that "[o]ther terms and conditions of our oil collection service are unchanged," Plaintiff does not point to any other "terms and conditions" it believes were still in effect after February 14, 2015. As noted above, Stetz testified expressly that he understood the Pay-For-Oil Rate Reduction Letter to terminate "the contract."[17] (Gary Stetz Dep. 224–25.)

Because the Pay-For-Oil Rate Reduction Letter served as the sixty-days notice to terminate the Waste Oil Agreement, the Waste Oil Agreement was terminated effective February 14, 2015.

However, notwithstanding the Court's conclusion that the Waste Oil Agreement was terminated effective February 14, 2015, the Court cannot conclude as a matter of law that Plaintiff may not recover any post-termination damages. Defendant's argument that Plaintiff is not entitled to damages after February 14, 2015 is based on the Waste Oil Agreement's

---

[17] Plaintiff also asserts that Judge Mann "determined that [Defendant] surreptitiously continued to collect waste oil from [Plaintiff's] customers" after February of 2015. (Pl. Opp'n 24–25.) However, this is a mischaracterization of Judge Mann's October 19, 2016 Order, where Judge Mann concluded that Defendant violated Rule 34 of the Federal Rules of Civil Procedure by failing to make clear that it was withholding otherwise discoverable documents. To the extent Plaintiff is attempting to argue that the Waste Oil Agreement remained in force under a theory of contract ratification, *see Allen v. Riese Org., Inc.*, 965 N.Y.S.2d 437, 440 (App. Div. 2013) ("Ratification occurs when a party accepts the benefits of a contract and fails to act promptly to repudiate it." (citations omitted)), the argument fails, because — assuming this theory is applicable to the facts of this case — the Pay-For-Oil Rate Reduction Letter constituted a repudiation of the Waste Oil Agreement prior to any purportedly ratifying conduct.

termination; however, whether Plaintiff may be able to pursue damages on alternative legal theories other than based on the contract is not before the Court.

**III. Conclusion**

For the foregoing reasons, the Court grants Defendant's motion for summary judgment as to Plaintiff's claim for breach of the Waste Oil Agreement.

                         SO ORDERED:


                         _____s/ MKB_____
                         MARGO K. BRODIE
                         United States District Judge

Dated: October 17, 2018
       Brooklyn, New York