UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

COMMERICAL LUBRICANTS, LLC,

                Plaintiff,

v.

SAFETY-KLEEN SYSTEMS, INC.,

                Defendant.

**MEMORANDUM & ORDER**
14-CV-7483 (MKB)

---

MARGO K. BRODIE, United States District Judge:

Plaintiff and Counterclaim-Defendant Commercial Lubricants, LLC ("Plaintiff") commenced the above-captioned action against Defendant and Counterclaim-Plaintiff Safety-Kleen Systems, Inc. ("Defendant") on December 23, 2014, alleging that Defendant breached certain contracts relating to the distribution of recycled oil. (Compl., Docket Entry No. 1.) By Memorandum and Order dated June 14, 2019 (the "June 2019 Order"), the Court granted Plaintiff leave to amend the Second Amended Complaint. (June 2019 Order, Docket Entry No. 74.) On July 10, 2019, Plaintiff filed a Third Amended Complaint ("TAC"), adding claims for (1) breach of the Waste Oil Agreement (the "Agreement"), (2) breach of the covenant of good faith and fair dealing, (3) unjust enrichment, and (4) quantum meruit. (TAC ¶¶ 93–113, Docket Entry No. 78.)

Currently before the Court is Defendant's motion to dismiss three of the four added claims.[1] (PMC Request, Docket Entry No. 79; Def. Suppl. Br. in Supp. of Mot. to Dismiss

---

[1] By letter dated July 19, 2019, Defendant requested a pre-motion conference regarding its anticipated motion to dismiss three of the four added claims ("PMC Request"). (PMC Request, Docket Entry No. 79.) By Order dated November 1, 2019 ("the November 2019

("Def. Suppl. Br."), Docket Entry No. 82.) For the reasons set forth below, the Court denies the motion.

## I. Background

The Court assumes familiarity with the underlying facts and procedural history of the case as set forth in its prior decisions,[2] and provides only the relevant procedural history below.

On February 25, 2019, Plaintiff moved for leave to amend the Second Amended Complaint to add four new claims. (*See generally* Pl. Mot. for Leave to Amend ("Pl. Mot."), Docket Entry No. 68; Pl. Mem. in Supp. of Pl. Mot., Docket Entry No. 68-1.) Defendant opposed the motion on the grounds that, *inter alia*, (1) Plaintiff had failed to show good cause pursuant to Rule 16(b)(4) of the Federal Rules of Civil Procedure and (2) Plaintiff had failed to satisfy Rule 15(a)(2) of the Federal Rules of Civil Procedure because amendment was futile and would result in substantial prejudice to Defendant, and the motion was brought in bad faith. (Def. Opp'n to Pl. Mot. 3, Docket Entry No. 72.) In the June 2019 Order, the Court granted Plaintiff's motion, (June 2019 Order 2–3), and on July 10, 2019, Plaintiff filed the TAC, (TAC).

By letter dated July 19, 2019, Defendant filed a request for a pre-motion conference in anticipation of its motion to dismiss three of the four claims added by the TAC. (PMC Request.)

---

Order"), the Court denied the request for a pre-motion conference and notified the parties of its intent to treat the parties' letter submissions as their motion papers for the motion to dismiss. (Nov. 2019 Order.) The Court invited the parties to submit additional briefing, if necessary, (*id.*), and on November 8, 2019, the parties submitted letter briefs, (Def. Suppl. Br. in Supp. of Mot. to Dismiss ("Def. Suppl. Br."), Docket Entry No. 82; Pl. Suppl. Br. in Opp'n to Def. Br. ("Pl. Suppl. Br."), Docket Entry No. 83).

[2] *See Commercial Lubricants, LLC v. Safety-Kleen Sys., Inc.*, No. 14-CV-7483, 2019 WL 2492752, at *2–3 (E.D.N.Y. June 14, 2019); *Commercial Lubricants, LLC v. Safety-Kleen Sys., Inc.*, No. 14-CV-7483, 2018 WL 5045760, at *1–5 (E.D.N.Y. Oct. 17, 2018); *Commercial Lubricants, LLC v. Safety-Kleen Sys., Inc.*, No. 14-CV-7483, 2017 WL 3432073, at *1–5 (E.D.N.Y. Aug. 8, 2017).

Defendant sought to move to dismiss Plaintiff's claims for: (1) breach of the covenant of good faith and fair dealing implied in the Agreement, (2) unjust enrichment, and (3) quantum meruit. (PMC Request 1.) Defendant argues dismissal is warranted because: (1) Plaintiff cannot support a claim for breach of the covenant of good faith and fair dealing because there was no valid contract in place at the time of the alleged breach, (*id.* at 2); (2) even if the alleged breach occurred while the parties still had a valid contract, the claim is redundant of Plaintiff's breach of contract claim, (*id.* at 2–3); and (3) Plaintiff's claims for unjust enrichment and quantum meruit cannot proceed because the parties had a valid and enforceable contract governing the same subject matter, (*id.* at 3). After the Court notified the parties that it would consider the submissions on the merits and invited the parties to submit any additional briefing, Defendant submitted a letter brief on November 8, 2019, reiterating its position set forth in the PMC Request. (*See* Def. Suppl. Br.)

By letter dated July 26, 2019, Plaintiff argues that all three claims should proceed. (Pl. Resp. to PMC Request, Docket Entry No. 80.) First, Plaintiff argues that the breach of covenant of good faith and fair dealing claim challenges Defendant's conduct while the Agreement was still in effect, i.e., before its termination on February 14, 2015.[3] (*Id.* at 2.) Second, Plaintiff argues that the breach of good faith and fair dealing claim, which "seeks post-termination damages for [Defendant's] deliberate manipulation of the . . . Agreement to destroy [Plaintiff's] right to receive . . . [its] ongoing benefits," is distinct from the breach of contract claim, which

---

[3] In July of 2013, Plaintiff purchased the assets of a company called New York Commercial Lubricants, which included the contractual rights to the Agreement. *Commercial Lubricants, LLC*, 2018 WL 5045760, at *1. By Memorandum and Order dated October 17, 2018, the Court found that the Agreement was terminated effective February 14, 2015. *Id.* at *12.

3

seeks compensatory damages for Defendant's failure to "pay commissions due and owing under the Agreement." (*Id.*) Finally, Plaintiff argues that its unjust enrichment and quantum meruit claims are validly brought because those claims are based on Defendant's "wrongful post-termination conduct" to which the Agreement does not apply. (*Id.* at 2–3.) Plaintiff also submitted a letter brief on November 8, 2019, reiterating its arguments in support of the claims. (*See* Pl. Suppl. Br.)

## II. Discussion

### a. Breach of covenant of good faith and fair dealing claim

Plaintiff bases its breach of good faith and fair dealing claim on allegations that, while the Agreement was still in place, Defendant "dropp[ed] the price that [Defendant] was willing to pay [Plaintiff] for waste oil to zero, but ke[pt] all other contract terms 'unchanged,'" thereby "act[ing] in bad faith to destroy [Plaintiff's] right to receive the benefits of the . . . Agreement." (Pl. Resp. to PMC Request 2; *see also* TAC ¶¶ 102–03.) Plaintiff alleges that Defendant "knew it could not terminate the . . . Agreement and continue collecting waste oil from Plaintiff's customers," and "[t]herefore, to prevent Plaintiff from entering into a waste oil agreement with a different, competing supplier, Defendant kept the . . . Agreement in place." (TAC ¶¶ 104–05.) However, "once Plaintiff was out of the picture, [Defendant] raised the price and collected waste oil directly from Plaintiff's customers." (*Id.* ¶ 103.)

"Under New York law, 'implicit in every contract is a covenant of good faith and fair dealing[,] which encompasses any promises that a reasonable promisee would understand to be included.'" *Spinelli v. Nat'l Football League*, 903 F.3d 185, 205 (2d Cir. 2018) (quoting *N.Y. Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 318 (1995) (alteration omitted)); *see also Fleisher v. Phoenix Life Ins. Co.*, 858 F. Supp. 2d 290, 298 (S.D.N.Y. 2012) ("Under New York law,

there is a covenant of good faith and fair dealing implied in all contracts." (citing *511 West 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002))); *Carvel Corp. v. Diversified Mgmt. Grp.*, 930 F.2d 228, 230 (2d Cir. 1991). "Neither party to a contract shall do anything that has the effect of destroying or injuring the right of the other party to receive the fruits of the contract, or to violate the party's presumed intentions or reasonable expectations." *Spinelli*, 903 F.3d at 205 (alteration and internal quotations marks omitted) (quoting *M/A–COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990)).

"To avoid redundancy, [c]laims of breach of the implied covenant must be premised on a different set of facts from those underlying a claim for breach of contract." *Fleisher*, 858 F. Supp. 2d at 299 (quoting *Deutsche Bank Sec. Inc. v. Rhodes*, 578 F. Supp. 2d 652, 664 (S.D.N.Y. 2008) (alteration and internal quotation marks omitted). "A party may maintain a claim for breach of the implied covenant only if the claim is based on allegations different from the allegations underlying the accompanying breach of contract claim." *Id.*

Defendant's argument that Plaintiff's breach of the covenant of good faith and fair dealing claim must be dismissed because the conduct alleged by Plaintiff occurred after the Agreement had been terminated is without merit, as Plaintiff alleges that Defendant's breach occurred while the Agreement was still in effect. (*See* Pl. Resp. to PMC Request 2; TAC ¶¶ 101–06.)

Defendant's argument that the breach of the covenant of good faith and fair dealing count is duplicative of the breach of contract claim is also without merit. Plaintiff alleges that Defendant breached the implied covenant of good faith and fair dealing by dropping the waste oil price in the Agreement to zero, thereby depriving Plaintiff of its right to benefit from the Agreement. This claim is separate and distinct from Plaintiff's claim for compensatory damages

5

stemming from Defendant's breach of the Agreement by failing to pay Plaintiff commissions actually earned under the Agreement.[4]  While Defendant argues that dropping the price "could never constitute bad faith . . . because it was an agreed to bargain," since Defendant "could change the price it would pay for waste oil based on fluctuations in the market," (Def. Suppl. Br. 3), this is not a basis to dismiss the claim as a matter of law.  Nor is the Court persuaded that the "180 day quasi non-compete term," (*id.*), precludes Plaintiff from pursuing this claim.

### b. Unjust enrichment and quantum meruit claims

Plaintiff's unjust enrichment and quantum meruit claims are based on Defendant's alleged "wrongful post-termination conduct," by which Plaintiff alleges Defendant "continu[ed] to collect millions of gallons of waste oil from [Plaintiff's] customers after deliberately and wrongfully cutting [Plaintiff] out of the Agreement," and to which Plaintiff argues the Agreement does not apply.  (Pl. Resp. to PMC Request 2–3.)

Plaintiff alleges that Defendant was unjustly enriched by "continuing to collect waste oil from Plaintiff's customers and sell other products and services to Plaintiff's customers . . . through at least November 18, 2018" — customers to whom Plaintiff had introduced Defendant "with the agreement and understanding that Plaintiff would be paid for this access to Plaintiff's customers and customer lists."  (TAC ¶ 97.)  Defendant allegedly "continued to utilize Plaintiff's customers and customer lists . . . without Plaintiff's permission and without compensating Plaintiff," despite Plaintiff's "expect[ation] that it would compensated for these services."  (TAC ¶¶ 111–12.)

---

[4] In support of its breach of contract claim, Plaintiff alleges that Defendant "fail[ed] to pay Plaintiff the $243,429.95 in commissions . . . owe[d] to Plaintiff for waste oil collected by Defendant from October 2014 through February 14, 2015."  (TAC ¶ 94.)

6

Defendant argues that this claim is governed by the terms of the Agreement, which allow Defendant "to change the price of the oil," and that, unlike Plaintiff, who is restricted by the Agreement from competing against Defendant for 180 days after the Agreement's termination, Defendant is not subject to any post-termination restrictions. (Def. Suppl. Br. 2.)

Under New York law, quantum meruit and unjust enrichment are "analyze[d] . . . together as a single quasi contract claim." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005); *see also id.* ("[Q]uantum meruit and unjust enrichment are not separate causes of action . . . . [U]njust enrichment is a required element for an implied-in-law, or quasi contract, and quantum meruit . . . is one measure of liability for the breach of such a contract." (quoting *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 663 (2d Cir. 1996))). While "New York law does not permit recovery in quantum meruit . . . if the parties have a valid, enforceable contract that governs the same subject matter as the quantum meruit claim . . . a valid contract bars a quantum meruit action only where 'the scope of the contract clearly covers the dispute between the parties.'" *Mid-Hudson Catskill Rural Migrant Ministry, Inc.*, 418 F.3d at 175 (quoting *Clark–Fitzpatrick, Inc. v. Long Island Rail Road Co.*, 70 N.Y.2d 382, 389 (1987)).

Because Plaintiff's unjust enrichment and quantum meruit claims are based on Defendant's conduct after the termination of the Agreement, which Plaintiff has plausibly alleged is not covered by the Agreement, Plaintiff has sufficiently stated a claim for unjust enrichment and quantum meruit. *See id.* ("A party is not precluded from proceeding on both breach of contract and quasi-contract theories where the contract does not cover the dispute in issue." (alterations omitted) (quoting *Curtis Props. Corp. v. Greif Cos.*, 653 N.Y.S.2d 569, 571 (App. Div. 1997))); *Waldman v. Englishtown Sportswear, Ltd.*, 460 N.Y.S.2d 552, 556 (App.

7

Div. 1983) ("Where the express contract has been rescinded, is unenforceable or abrogated, a recovery may be had on an implied promise to pay for benefits conferred thereunder."); *see also SAA-A, Inc. v. Morgan Stanley Dean Witter & Co.*, 721 N.Y.S.2d 640, 642–43 (App. Div. 2001) (quantum meruit claim may be permitted to proceed where the "express contract" has been "in some manner remov[ed] . . . from the picture in the normal fashion (recission, abandonment, etc.)" (citation omitted)).

### III. Conclusion

For the foregoing reasons, the Court denies Defendant's motion to dismiss.

Dated: November 25, 2019
       Brooklyn, New York

SO ORDERED:

     s/ MKB
MARGO K. BRODIE
United States District Judge