```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

COMMERICAL LUBRICANTS, LLC,

                        Plaintiff,           MEMORANDUM & ORDER
                                             14-CV-7483(EK)(RLM)
          -against-

SAFETY-KLEEN SYSTEMS, INC,

                        Defendant.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

        Plaintiff Commercial Lubricants, LLC claims that Defendant Safety-Kleen Systems breached certain agreements related to the collection and resale of what the parties call "waste oil." Safety-Kleen now moves for summary judgment on three of Commercial Lubricants' claims, all of which arise out of one contract — the Used Oil Incentive Agreement dated March 18, 2013 (the "Waste Oil Agreement"). For the reasons that follow, I grant Defendant's motion.

### I. Background

        The Court assumes familiarity with the underlying facts and long procedural history of this case, as set forth in prior decisions.[1] The following background is relevant to the

---

[1] Several prior decisions were issued by the Honorable Margo K. Brodie, the judge previously assigned to this case. *See* Order dated Aug. 8, 2017, ECF No. 51 (granting in part and denying in part Defendant's motion for partial summary judgment as to Plaintiff's claims, denying Defendant's motion for summary judgment as to Defendant's counterclaims, and reserving judgment

instant motion. These facts are drawn from Defendant's Rule 56.1 Statement of Material Facts, Plaintiff's Rule 56.1 Counterstatement, and their underlying exhibits. I view the facts in the light most favorable to Plaintiff, the nonmoving party. *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005).

The parties are involved in the recycling and eventual resale of waste oil (or "used" oil) of various types — including motor oil, hydraulic fluid, and transmission fluid — in the New York metropolitan area.[2] Commercial Lubricants is a recycled oil distributor; it is in the business of selling lubricants to customers like the Metropolitan Transportation Authority of New York City, car dealerships, and others.[3] Safety-Kleen is an oil

---

on Plaintiff's claim for breach of the Waste Oil Agreement); Order dated Oct. 17, 2018, ECF No. 59 (granting Defendant's motion for partial summary judgment on Plaintiff's claim that Commercial Lubricants "wrongfully attempted to repudiate the Waste Oil Agreement by letter dated December 16, 2014," but noting that Plaintiff may be able to pursue post-termination damages on "alternative legal theories other than based on the contract"); Order dated June 14, 2019, ECF No. 74 (granting motion to amend the complaint to add four claims: (i) breach of the Waste Oil Agreement for oil collected between October 2014 and February 14, 2015 (*i.e.*, pre-termination); (ii) breach of the covenant of good faith and fair dealing in the Waste Oil Agreement, for the period thereafter; (iii) unjust enrichment; and (iv) quantum meruit); Order dated Nov. 25, 2019, ECF No. 84 (denying Defendant's motion to dismiss the new claims).

[2] Defendant's 56.1 Statement of Material Facts ("Def. 56.1") ¶¶ 1-2, ECF No. 99-1; Exhibit D to Def. 56.1, Deposition of Joseph Ioia 55:7-14, ECF No. 99-5.

[3] Waste Oil Agreement at 1, ECF No. 44-5; Def. 56.1 ¶ 2; Exhibit I to Def. 56.1, Deposition of Curt Knapp 33:21-25, ECF No. 99-9 (Commercial Lubricants supplied "heavy duty engine oil" to the MTA); Exhibit H to Plaintiff's 56.1 Counterstatement of Material Facts ("Pl. 56.1

"re-refiner," in the business of "waste oil recovery."[4] It retrieves used oil from entities like Commercial Lubricants' customers, and sells the re-refined (or "cleaned") oil back to distributors. Waste Oil Agreement at 1-2.

The Waste Oil Agreement was entered into between Safety-Kleen and New York Commercial Lubricants, Inc. ("NYCL") — a predecessor to Commercial Lubricants — in March 2013. Waste Oil Agreement at 1. Approximately four months later, in July 2013, Commercial Lubricants purchased its oil-distribution business from NYCL, along with the right to do business under the name "Metrolube."[5] Through that transaction, Commercial Lubricants stepped into NYCL's shoes under the Waste Oil Agreement.[6]

Under the Waste Oil Agreement, Commercial Lubricants was obligated to "exclusively promote" Safety-Kleen's re-refining services to its customers and use its "best efforts" to generate new customers for Safety-Kleen. Waste Oil Agreement at 1. Safety-Kleen would then collect waste oil from those

---

Counterstatement"), Deposition of Gary Stetz ("Stetz Dep.") 38:24-39:21, ECF No. 100-11.

[4] Waste Oil Agreement at 1; Def. 56.1 ¶ 1.

[5] Def. 56.1 ¶¶ 4-5. The record does not prominently reveal whether or how NYCL and Commercial Lubricants were affiliated prior to this transaction. Commercial Lubricants describes NYCL simply as a "distinct entity" in the complaint. Third Am. Compl. ¶ 18.

[6] Def. 56.1 ¶¶ 4-5, 7; Stetz Dep. 27:3-28:4, ECF No. 100-11; Certification of Gary Stetz ¶ 3, ECF No. 100-2.

3

customers for re-refining, and that oil, in turn, would be made available for delivery back to distributors like Commercial Lubricants for sale to end users.[7]  Commercial Lubricants' "managing member," Gary Stetz, described this cycle as a "cradle to grave" arrangement for end-users.  Stetz Dep. 38:1-11.[8]

To the extent Commercial Lubricants introduced Safety-Kleen to "new customers" (meaning customers with which Safety-Kleen did not have a pre-existing relationship), Safety-Kleen was to pay Commercial Lubricants a commission.  Waste Oil Agreement at 1 (defining "New Customer").  The Waste Oil Agreement set forth both (a) the price per gallon that Safety-Kleen would pay Commercial Lubricants' customers for the waste oil that it picked up from them, and (b) the commission that Safety-Kleen would pay Commercial Lubricants (also on a per-gallon basis).

Specifically, the Waste Oil Agreement provided that Safety-Kleen would pay Commercial Lubricants' customers a price

---

[7] See Exhibit B to Pl. Letter Br. in Opp. to Def. Mot. for Summary Judgment ("Pl. Opp. Letter"), Stetz Dep. 31:1-11, ECF No. 97-2 (Safety-Kleen picked up waste oil from customers); id. 38:1-11 (Commercial Lubricants sold it back to customers).

[8] Generally speaking, it appears that once Commercial Lubricants made introductions, Safety-Kleen would negotiate its own arrangements with those customers.  See id. 38:19-23 (Commercial Lubricants' managing member says that "I was always involved in these [pricing] conversations," but that "at the end of the day, you know, the number was agreed to by Safety-Kleen and that's how we got there.").  The Waste Oil Agreement expressly contemplated that an end user might sign a contract with Safety-Kleen or "request[] service with Safety-Kleen . . . without a contract."  Waste Oil Agreement at 1.

4

for used oil to be set "in accordance with the terms of Exhibit A . . . or as authorized by the Safety-Kleen Area General Manager." *Id.* at 1. Exhibit A to the agreement, titled "Authorized PFO Price Range," listed "price ranges" per gallon of oil collected. *Id.* at Exhibit A. The more waste oil Safety-Kleen was picking up from a given customer, the higher the per-gallon price Safety-Kleen would pay. *See id.* Exhibit A stated, however, that the price per gallon "will fluctuate as based upon the industry indexes for under used oil." *Id.*

The Waste Oil Agreement's Exhibit B, in turn, described how the commissions that Safety-Kleen paid Commercial Lubricants were to be calculated. The particulars of these commission terms are not relevant to this order.

The Waste Oil Agreement could be terminated by "[e]ither party . . . upon 60 days['] prior written notice." *Id.* at 1. It also expressly bound Commercial Lubricants to a 180-day non-solicitation obligation after the termination of the contractual relationship. *Id.* at 2. This provision was conditioned on Safety-Kleen continuing to pay all amounts due to Commercial Lubricants, including during the 180-day period. *Id.* Importantly, this non-solicitation obligation was not bilateral — the contract imposed no equivalent obligation on Safety-Kleen.

In December 2014, Safety-Kleen sent Commercial Lubricants a letter stating that as of December 21, Safety-Kleen

5

was adjusting all waste-oil payment rates under the Waste Oil Agreement to $0.00 per gallon. Letter dated Dec. 16, 2014, ECF No. 44-5. Safety-Kleen contends this was a company-wide policy, and was due to historically low crude oil rates. Def. 56.1 ¶¶ 11-12. Later, Safety-Kleen began to pay negative rates — that is, to *charge* customers for each gallon of oil it collected, instead of paying them. *Id.* ¶ 11.

Judge Brodie found that the December 16 letter served as a termination notice, effective sixty days later (per the Waste Oil Agreement's notice period) — *i.e.*, on February 14, 2015. *Commercial Lubricants, LLC v. Safety-Kleen Sys., Inc.*, No. 14-CV-7483 (MKB), 2018 WL 5045760, at *12 (E.D.N.Y. Oct. 17, 2018). Following the termination of the Waste Oil Agreement, Safety-Kleen allegedly continued to collect waste oil from Commercial Lubricants' customers through November 2018. Commercial Lubricants claims it is owed more than $474,000 for used oil collected from its customers after February 14, 2015. Pl. 56.1 Counterstatement ¶ 9. This calculation is based on the rate set forth in Exhibit B to the agreement.

Safety-Kleen moves for summary judgment on three counts in the third amended complaint that arise out of its termination of the Waste Oil Agreement and its subsequent solicitation of Commercial Lubricants' customers. These claims allege unjust enrichment (count eight), breach of the implied

6

covenant of good faith and fair dealing (count nine), and quantum meruit (count ten).  Defendant does not move to dismiss count seven, which is breach of contract for failing to pay Plaintiff $243,429.95 in commissions for waste oil collected by Defendant from October 2014 through February 14, 2015 (the period prior to the termination notice becoming effective).

## II.  Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact is one that "can affect the outcome under the applicable substantive law." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A defendant's motion for summary judgment will be granted if the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party may demonstrate the absence of a genuine issue of material fact "in either of two ways: (1) by submitting evidence that negates an essential element of the non-moving

7

party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017). When the moving party has carried its burden, its opponent must produce "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. The non-moving party must, however, "do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citations and quotations omitted). If "no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Id.* (quotations omitted).

In performing this analysis, the Court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). "If, in this generous light, a material issue is found to exist, summary judgment is improper." *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n*, 182 F.3d 157, 160 (2d Cir. 1999).

**III. Discussion**

Plaintiff challenges the Defendant's termination of the Waste Oil Agreement and its subsequent collection of waste oil from Plaintiff's customers. For the following reasons, Plaintiff has failed to establish the existence of a genuine dispute of material fact regarding these claims.

**A.   Implied Covenant of Good Faith and Fair Dealing**

The complaint's "Ninth Cause of Action" alleges breach of the Waste Oil Agreement. Commercial Lubricants does not point to a specific term of the Waste Oil Agreement and argue that Safety-Kleen breached that term. Instead, it contends that Safety-Kleen breached the implied covenant of good faith and fair dealing. Safety-Kleen did this, according to Commercial Lubricants, by its "improper termination" of the agreement. Commercial Lubricants argues that the termination was improper because (i) Safety-Kleen did not rely on industry indices in dropping price to zero; (ii) the agreement authorized a price change based on "used" oil, not "crude" oil rates; and (iii) the price drop was not part of company-wide policy. This "improper" termination, according to Commercial Lubricants, resulted in the denial of commissions due on waste oil that Safety-Kleen continued to collect from Commercial Lubricants' customers after the Waste Oil Agreement terminated. *See* Pl. Opp. Letter at 2, ECF No. 97.

"Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance." *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995). "This embraces a pledge that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Id.* (quoting *Kirke La Shelle Co. v. Paul Armstrong Co.*, 263 N.Y. 79, 87 (1933)). "The implied covenant of good faith and fair dealing is breached when a party acts in a manner that would deprive the other party of the right to receive the benefits of their agreement." *Singh v. City of New York*, 189 A.D.3d 1697, 1700 (2d Dep't 2020).

It is well settled, however, that the covenant of good faith and fair dealing is circumscribed by the express provisions of an arms-length agreement. The covenant "cannot be construed so broadly" as to "effectively [] nullify other express terms of a contract, or to create independent contractual rights." *Fesseha v. TD Waterhouse Inv. Servs.*, 305 A.D.2d 268, 268 (1st Dept. 2003). A plaintiff cannot, therefore, assert that the defendant acted in bad faith when it exercised a discretionary right expressly granted by the contract in question. *Baker v. 16 Sutton Place Apartment Corp.*, 110 A.D.3d 479, 480 (1st Dept. 2013). Where a contract includes "a termination clause [that] permits the parties to terminate

10

[that] agreement at will," New York courts "do not qualify an otherwise absolute power to terminate by requiring termination to be in good faith." *Joseph Victori Wines, Inc. v. Vina Santa Carolina S.A.*, 933 F. Supp. 347, 353 (S.D.N.Y. 1996) (quotations omitted); *Schwartz v. Fortune Mag.*, 89 F. Supp. 2d 429, 434 (S.D.N.Y. 1999) (evidence of "bad faith" is "irrelevant, as the court does not inquire into why a party exercised his right to terminate a contract when the contract is terminable without cause").

Here, it is undisputed that the contract was — by its express provisions — terminable at will by either party. *See* Waste Oil Agreement at 1. The contract permitted termination for any reason or no reason, and (as Judge Brodie determined) Safety-Kleen exercised this right by sending the December 16, 2014 letter to Commercial Lubricants. *Commercial Lubricants, LLC* 2018 WL 5045760, at *12. Plaintiff cites no case in which New York's implied covenant of good faith and fair dealing was breached via the "improper termination" of a business-to-business contract that was terminable at will, and the Court has located none.[9] Even if Safety-Kleen did focus on the wrong index

---

[9] There are (rare) cases invoking the implied covenant on behalf of individual employees who are otherwise at-will. Those cases involve special circumstances. In *Wakefield v. Northern Telecom, Inc.*, 769 F.2d 109, 112 (2d Cir. 1985), the circuit held that an employer could be liable under the implied covenant for terminating an at-will employee "precisely in order to avoid paying him commissions on sales that were completed but for

in adjusting its prices, that fact is immaterial in light of Safety-Kleen's undisputed right to terminate with no explanation whatsoever.[10]

Second, there is no provision in the Waste Oil Agreement that conferred any post-termination rights on Plaintiff or imposed any post-termination obligations on Defendant.  This is a prominent omission, given that the contract imposed a non-solicitation restriction on *Commercial Lubricants*.  If Commercial Lubricants wanted to constrain Safety-Kleen's ability, post-termination, to continue to do business with the "new customers" that Commercial Lubricants introduced, then Commercial Lubricants had only to negotiate an

---

formalities."  (The court was applying New Jersey law, but still took pains to distinguish a seminal New York employment-law case in the process — *Murphy v. American Home Products, Inc.*, 58 N.Y.2d 293, 304-05 (1983).  *See id*.)  Here, Commercial Lubricants is claiming that it was entitled to commissions for *years* post-termination — not just commissions that were all-but-due at the time the contract was terminated.  (Those would be the commissions for sales during the sixty-day termination period, and Safety-Kleen concedes liability for those — *see* Note 10, *infra*.)  In addition, of course, Commercial Lubricants is not an individual employee.

Special circumstances also obtained in *Wieder v. Skala*, 80 N.Y.2d 628, 609 (1992), where the New York Court of Appeals held that an associate attorney's claim for breach of "employment relationship" was improperly dismissed despite the associate being employed at-will.  There, the associate was fired for reporting attorney misconduct to the Disciplinary Committee; the court grounded its ruling in the recognition that an attorney's mandatory reporting obligation was "critical to the unique function of self-regulation belonging to the legal profession."  *Id*.

[10] Safety-Kleen acknowledges its obligation to pay $243,429.95 in commissions to Commercial Lubricants for the oil it picked up from Commercial Lubricants' customers between October, when Safety-Kleen stopped paying waste oil commissions, through the date on which the termination was effective (February 14, 2015).  Def. 56.1 ¶ 33 ("SK does not dispute that it owes CL the aforementioned $243,429.95").

12

appropriate provision into the operative contract — or to negotiate an appropriate amendment to that contract, after the NYCL transaction. "Courts generally have been reluctant to find a breach of an implied covenant of good faith when doing so reads so much into the contract as to create a new term or when the alleged misconduct is expressly allowed by the contract." *Keene Corp. v. Bogan*, 1990 WL 1864, at *14 (S.D.N.Y. 1990).

      I decline to create such a new term here, given the parties' clear and obvious determination that post-termination restrictions on solicitation should run in only one direction. Simply put, the Waste Oil Agreement was the product of arms-length negotiation between sophisticated parties — in business for many years — and I cannot rewrite that contract to substitute a bilateral covenant for a unilateral one under the rubric of good faith and fair dealing. *See Hirsch v. Qingdao Orien Com. Equip. Co.*, No. 12-CV-952, 2015 WL 1014352, at *12 (E.D.N.Y. Mar. 6, 2015) (where contract language "expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded").

      Plaintiff's reliance on *Keene Corp. v. Bogan* is thus misplaced. Pl. Opp. Letter at 2 (citing *Keene Corp.*, 1990 WL 1864, *14). The court there noted that New York law "implies a

13

covenant of good faith when one party maintains control over the benefits that the other party is supposed to receive under the contract," *id.* at *15, and that that covenant is "violated when a party promises commissions or profits and then does not act in good faith to permit such commissions or profits to be earned, thereby depriving the other party of the benefit of the bargain." *Id.* at *14 (quotations omitted).  But, the court continued, "[t]he covenant is breached only when one party to a contract seeks to prevent its performance by, or to withhold its benefits from, the other . . . .  The mere exercise of one's contractual rights, without more, cannot constitute such a breach."  *Id.*  *Keene* ultimately held that the covenant had not been breached, for reasons that apply equally here: namely, that Safety-Kleen merely exercised its rights under the Waste Oil Agreement.

The Defendant's motion is therefore granted.  The breach of the implied covenant of good faith and fair dealing claim is dismissed.

**B.   Unjust Enrichment and Quantum Meruit**

Defendant also seeks summary judgment on the quantum meriut (count ten) and unjust enrichment (count eight) counts. Quantum meruit and unjust enrichment "are not separate causes of action"; rather, unjust enrichment "is a required element for an implied-in-law, or quasi contract, and quantum meruit, meaning

14

'as much as he deserves,' is one measure of liability for the breach of such a contract." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005). They are therefore generally considered together as a single quasi-contract cause of action. *Id.*

One essential element of these claims is a plaintiff's expectation of remuneration. *E.g.*, *Id.* (quantum meruit lies where the plaintiff has an "expectation of compensation" for services performed); *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 509 (2d Cir. 2009) (unjust enrichment results when a defendant is "benefitted . . . at the plaintiff's expense . . . [and] equity and good conscience require restitution"). Here, Safety-Kleen should pay commissions post-February 2015, Commercial Lubricants argues, because Safety-Kleen continued to solicit waste oil from Plaintiff's customers after terminating the agreement.

An implied contract claim, however, is barred by the existence of a valid and enforceable written contract on the subject.[11] *E.g.*, *Chartwell Therapeutics Licensing, LLC v. Citron*

---

[11] Plaintiff's reliance on *Milton Abeles, Inc. v. Farmers Pride, Inc.*, 603 F. Supp. 2d 500, 504 (E.D.N.Y. 2009), *see* Pl. Opp. Letter at 4-5, is misplaced for these same reasons. There, the plaintiff, a distributor, alleged that the defendant "cut plaintiff out of the distribution arrangement" in order to sell the product "directly to the subdistributors." *Id.* at 501-02. The court allowed a quantum meruit claim to proceed past summary judgment only because, unlike count nine here, "the distribution services for which plaintiff [sought] recovery [did] not fall within the scope of a valid, enforceable agreement." *Id.* at 504.

15

*Pharma LLC*, No. 16-CV-3181, 2020 WL 7042642, at *11 (E.D.N.Y. Nov. 30, 2020).  Plaintiff's principal, when asked what this expectation was based on, invoked only the contract.  Def. 56.1 ¶ 29 (citing Stetz Dep. 82:4-6, ECF No. 99-12) ("Well, it's *an agreement of what we were going to do* about these customers in common and that they would compensate me for it.  They [Safety-Kleen] stopped compensating, even though they continued doing business with those customers." (emphasis added)).  Plaintiff has adduced no other evidence, apart from the contract, about the basis for its expectation of continued compensation.  The Sixth Circuit — applying New York State law — spoke to this precise dynamic in *Harry W. Applegate, Inc. v. Stature Electric*, writing that "the parties clearly contemplated and rejected post termination commissions in their contract, and as a result, Plaintiff is foreclosed from asserting an unjust enrichment claim."  275 F.3d 486, 489 (6th Cir. 2001) (applying New York law).  Summary judgment is therefore granted as to both the quantum meruit and unjust enrichment claims.

        The Plaintiff is still, of course, entitled to collect the alleged unpaid commissions for used oil "purchases" by the Defendant during the sixty-day period following the termination notice, when the contract remained in effect.  Indeed, the parties do not dispute that the Defendant owes Plaintiff these commissions.  *See* Def. Mem. of Law in Support of Partial Mot.

16

for Summary Judgment at 8-9, ECF No. 99 ("It is not disputed that [Safety-Kleen] owes Commercial Lubricants $243,429.95 in commissions for waste oil that [Safety-Kleen] collected from October 2014 through February 2015."). These damages will be cognizable under count seven of the complaint, which alleges breach of contract for that period (without reference to the implied covenant).

### IV. Conclusion

For the foregoing reasons, the Defendant's motion for partial summary judgment is granted. Plaintiff's claims for unjust enrichment (count eight), breach of the implied covenant of good faith and fair dealing (count nine), and quantum meruit (count ten) are dismissed.

Trial in this case is scheduled to begin on October 18, 2021. The parties shall appear for a final pretrial conference before the undersigned on October 8, 2021 at 3:00 p.m.

SO ORDERED.

    /s Eric Komitee
ERIC KOMITEE
United States District Judge

Dated: September 22, 2021
       Brooklyn, New York